————o————

STATE OF MISSOURI, *ex rel.*, Attorney General, *vs.* JAMES H. VAIL, Respondent.

1. *Quo Warranto—Information—Attorney General—Private Person—Supreme Court—Jurisdiction.*—This Court has jurisdiction of informations in the nature of quo warranto, whether filed by the Attorney General, or by a private person ; though, where other tribunals have been provided for their adjudication, having all the power of this Court (subject to appeal), and more facilities for the trial of issues that may arise, this Court has generally declined the investigation of such cases.

2. *Quo Warranto—Information—Public Offices—Commission from Governor whether Conclusive.*—A Commission from the Governor is not a conclusive defense in an information in the nature of quo warranto for usurping a public office, whether the information be filed by the Attorney General or at the instance of a private party.

3. *Constitution, construction of—Supreme Court—Writs of Habeas Corpus, quo Warranto, &c.—Bill of Rights—Informations for Indictable Offences.*—The provision in the constitution authorizing this Court to issue writs of habeas, corpus, quo warranto, &c., and to hear and determine the same, necessarily assumes, that writs and informations are not criminal informations in the sense of the 14th section of the Bill of Rights, which prohibits criminal informations for indictable offences.

4. *Constitution, construction of—Bill of Rights—Trial by Jury—Habeas Corpus—Quo Warranto—Certiorari.*—The 17th section of the Bill of Rights, declaring the right of trial by jury inviolate, is manifestly applicable to criminal proceedings proper, and cannot be understood to require this Court on habeas corpus, or quo warranto, or certiorari, to summon juries.

5. *Elections—Votes—Secretary of State—County Clerks—Commissions—Governor—Ministerial Acts.*—In opening and casting up the votes at an election the County Clerk, or Secretary of State, has no discretion, and cannot determine upon the legality of the votes, and it is the duty of the Governor to issue the commission in accordance with the result so ascertained All of these officers act ministerially and not judicially.

6. *Elections—Majority Candidates—Disqualifications, not patent—Who Elected.*—The candidate, who at an election receives the greatest number of votes except the successful candidate, is not entitled to the office, when the successful candidate is ineligible owing to personal disqualifications and such as were not patent to the voters.

7—VOL. LIII.

53    97
99    228
53    97
124    492

53    97
137    634

53    97
142    335

53    97
152    479

53    97
f153    111
154    403

53    97
176    1716

State ex rel, Att'y. Gen. v. Vail.

7. *Quo Warranto—Informations—Public Offices—Elections—Illegal Votes.*— Upon an information in the nature of a quo warranto for usurpation of an elective public office, the qualifications of electors cannot be inquired into.

8. *Quo Warranto—Informations—Attorney General—Public Offices.*—Upon an information in the nature of quo warranto filed by the Attorney General for usurpation of an elective public office, the qualifications of another party not the incumbent, for the office cannot be inquired into.

9. *Quo warranto—Informations—Who can file—What judgment for relator—Statute of Anne.*—Neither in this State, nor under the Statute of Anne, is the relator in an information in the nature of a quo warranto necessarily a claimant for the office, but he must have a special interest in the matter, which interest is a preliminary question for the determination of the court upon his application to file the information ; and the court can give no judgment for the relator except so far as costs are concerned ; and his title is not necessarily examined into, except so far as it may incidentally or indirectly affect the right of the defendant.

## Quo Warranto.

*H. Clay Ewing, Attorney General, and John L. Thomas & Bro. and Louis F. Dinning,* for Relator.

I. This Court has jurisdiction. (Const., Mo., Art. VI. § III.)

II. This case must proceed by com. law, because in such cases in this State we have only com. law and equitable remedies.

III. A commission issued to a party by the Governor is not conclusive as against the State, complaining through her proper officer. (44 Mo., 223 ; 45 Mo., 59 ; 18 Lou., (An.) 517 ; State vs. McAdoo, 36 Mo., 453 ; State vs. McBride, 4 Mo., 303 ; 44 Mo., 229 ; 44 Mo., 230 ; 44 Mo., 160 ; 15 Johns., N. Y., 388 ; 45 Mo., 59 ; 36 Mo., 279 ; 44 Mo., 129.)

In the cases cited by respondent the Court refused to entertain jurisdiction, because it was held that another tribunal, had by statute, exclusive jurisdiction, as to the legality of votes, &c., and not because of the conclusiveness of the commission. (State vs. Garrigues, 28 Penn., (State R.) 9 ; 35 Penn., (State R.) 263 ; 44 Penn., (State R.) 332 ; State vs. Marlow, 15 Ohio, (State R.) 134.)

IV. On an ex-officio information in the nature of Quo Warranto, the Court will look beyond the Commission, and unless the Respondent has been elected, will give judgment of ouster. (People vs. Vail, 20 Wend., 12 ; 4 Cow., 297 ; 8 Cow., 102 ; 4 Wis., 420 ; State vs. Chandler, 45 Mo., 452, and cases there cited.)

State ex rel, Att'y. Gen. v. Vail.

V. An officer derives his title from the election or appoint-ment. (Hunter vs. Chandler, and State vs. Steers, *supra*.)

VI. The commission is at best only *prima facie* evidence of Respondent's right to the office, as already determined by this Court in this case at the February term.

VII. In a proceeding of this kind, the canvass made by the returning officers under our election laws is alone admissible in evidence, not even a mistake in addition can be corrected. (State vs. Garrigues, 28 Penn., (State R.) 9; State vs. Marlow, 15 Ohio, (State R.) 134.)

VII. If when one man, (the defeated candidate) complains, this Court will go behind the commission, certainly when the whole State enters her protest, the Court will go behind the commission. When a party is a candidate, and inelligible to hold the office to which he aspires, and receives a majority of the votes cast for that office, the opposing candidate, who is elligible, cannot oust the inelligible party who is in office;—but the want in elligibility in the office is a matter of public concern, and he can be ousted on an ex-officio information. (56 Penn., 270.)

IX. Where two candidates run for an office, and the one receiving the highest number of votes is inelligible, the party receiving the minority of votes, is not to be returned as elected. (Commonwealth vs. Cluley, 56 Penn.,St., 270; State vs. Giles, 1 Chand., (Wis.) 112; State vs. Swearingen, 12 Geo., 23; State vs. Gastinel, 18 Lou., (An.) 517; 21 Lou., (An.) 290. Leading cases on contested elections, 144, 300, 305.) If such inelligibility, is of such a character that the voters are bound to take notice of it, it has been held otherwise. (Gulick vs. Newby, 14 Ind., 93.)

X. We have a right in this case, to inquire into all questions of rights of electors, &c., and the fact that the same thing can be done in a contested election, does not estop the inquiry in a quo warranto. (Leading cases in contested elections, 480, 493; 44 Mo., 226.)

XI. Where the persons, on whose right to vote the validity of the defendant's title depends, were at the time of his

election in the actual possession of the franchise, in virtue of which they voted; at the trial no inquiry can be made into their right, unless an issue has been taken on it. (5 Bac. Ab., 188.)

*Leonard, Reynolds & Relfe*, for Respondent.

I. There are three writs : First, the old Writ of *Quo Warranto* ; a civil proceeding, always without any incidents of a criminal prosecution, instituted in the name of the State, by the Attorney General it is true, and at his suggestion and application, but *not* in the style of " The State at the relation of the Attorney," and not charging that the defendant " has and does now usurp, intrude into, and unlawfully exercise the powers and duties of a public office and trust," (a misdemeanor), but merely requiring him to exhibit his warrant, that is, his commission.

Second : The common law process of an information in the nature of a Quo Warranto, always a criminal procedure holding the defendant to answer by summary process, for a misdemeanor and making him liable to a fine and to ouster from office.

Third : The Statutory process by information in the nature of a *quo warranto* exhibited under the Statute, at the relation of a private person, always a civil procedure in existence solely by statute and only available in the Statutory manner. (State vs. St. Louis Perpetual Marine Ins. Co., 8 Mo., 330 ; 3 Black., 263 ; Willcock on Quo Warranto "Information" (Law Library,Vol. 12, p. 247) ; State vs. Ashley, 1 Ark., 279 ; Rex vs. Marsden, 3 Burrows, 1817 ; Tancred on Quo Warranto,5, 52, 3 ; Comyn's Digest," Quo Warranto ;" 4 Comyn's Digest "Information ; " 4 Black., 312 ; Bacon's Abridgment "Information;" Cole on Quo Warranto Informations, § 110 (54 Law Library, O. S., 89). The old statutory writ of Quo Warranto exists in this State by force of statute. (W. S. 886.) This court has undoubted authority to "issue here and determine" that writ. (Const. Mo., Art. 6, § 3.)

The English Statutes, reducing informations in the nature of *quo warranto* to a form of action between the parties,

essentially a civil action, are in substance adopted and in existence in this State. (G. S., 1825, § 1, p. 654 ; W. S. 1133.) In proceedings under these acts, this Court by force of the acts, and of its organic act, has appellate jurisdiction only.

The present proceeding is not one instituted under our Statute ; it is not by the Attorney General or Circuit Attorney, at the relation of a private individual. Nor is it the old writ of Quo Warranto, for, in the first place, it is brought, not in the name of the State at the relation of the Attorney General, and in the second place, it specifically charges the defendant with a misdemeanor, for which, if convicted, the punishment must be a fine or imprisonment.

There can be no doubt but that it is, just what this Court has already held it to be, the old common law process, "an information in the nature of a *quo warranto*,"always a criminal procedure ; in other words, the defendant by this action for an indictable offense is proceeded against criminally by information. (State, *ex rel.*, Vail vs. Clark, 52 Mo., 508.)

II. The usurpation of a public office or trust, being a misdemeanor punishable by fine or imprisonment, is an indictable offense. (W. S., 478, § 24 ; 516, § 30.)

III. Since the charge is an indictable offense, the respondent cannot be proceeded against criminally by information, but is entitled to a trial by jury. (Const. Mo., Art. 1, § 14 ; State vs. Ashley, 1 Ark., 279 ; Bank of Vincennes vs. The State, 1 Blackf., 267.) .

IV. When the Constitution of our State, in the "Declaration of Rights," contains a positive inhibition upon proceedings against a citizen for any indictable offense, other than those named by information, it is very obvious that, when in the 3d Section of the 6th Article it gives this Court power to issue, hear and determine writs of *quo warranto*, it did not intend to include in it a power to issue, hear and determine writs necessarily involving a proceeding against one criminally, for an usurpation of a public office or trust, that having been made indictable.

V. The Respondent was originally in this office, by a commission, the legality of which is not controverted. No one else has been commissioned or qualified as his successor, to whom he could turn over his office, consequently there can be no usurpation on his part, and no vacancy in this office. (W. S., 963.)

VI. The issuing of commissions is confided to the Governor, and no other branch of the Government can interfere. (State vs. The Governor, 39 Mo., 388 ; State vs. Howard Co. Ct., 41 Mo., 251.)

VII. If the judiciary cannot compel the Executive to issue a commission,or prevent him from doing so in the first instance, they cannot afterwards, at the instance of a subordinate officer of the Executive, and without the intervention of private rights,nullify that commission, indirectly doing that which they have said they cannot do directly.

VIII. The Executive in issuing a commission acts ministerially and politically, and is not answerable to the Courts for his acts; and having acted on a subject within the scope of his constitutional authority, it is to be presumed that his acts are lawful. (State vs. The Governor, 1 Dutcher (N. J.) 348; Gulick vs. New, 14 Ind., 96 ; Marbury vs. Madison, 1 Cr., 49 ; Hawkins vs. The Governor, 1 Ark., 570 ; Exparte Dennett, 32 Maine, 508 ; Cooley Const., Limit. 41.)

IX. When the respondent shows his commission, issued by the Governor, as Chief Executive of the State, as a justification for his action, it is conclusive upon the state in a proceeding by a subordinate executive officer, instituted for the purpose of ascertaining whether or not he has that authority.

X. The rule which makes a commission *prima facie* evidence, so far as the State is concerned, in drawing salary from the State, certainly will embrace all inquiries by the State. (State vs. Draper, 48 Mo., 213 ; State vs. Mosely, 34 Mo., 375 ; State vs. Mosely, 36 Mo., 70 ; Winston vs. Mosely, 35 Mo., 146.)

XI. The commission, when issued, must be taken as at

State ex rel, Att'y. Gen. v. Vail.

least *prima facie* evidence, that the person holding it is lawfully entitled to the office. (State vs. Howard Co. Ct., 41 Mo., 247; State vs. Pool, 41 Mo., 32; Hunter vs. Chandler, 45 Mo., 452.)

XII. So far as an inquiry by the State is concerned, the action of the Governor in granting the commission is conclusive. No private rights can be inquired into or determined in this procedure. (Hunter vs. Chandler 45 Mo., 452.)

XIII. Our statutes provide two remedies, two procedures for the testing of private rights: the one by a contest, the other by *quo warranto* at the relation of the claimant; this takes away the common law procedure by *quo warranto* at the relation of the Attorney General. The remedy prescribed by the statute must be pursued. (Commonwealth vs. Garrignes, 28 Penn., (St. R.)9; Comm. vs. Baxter, 35 Pa.,263; Comm. vs. Leech, 44 Pa.,332; State vs. Marlow, 15 Ohio, 114; Peck vs. Weddell, 17 Ohio, (State) 271; Lindell vs. H. & St. Joe R. R., 38 Mo., 485; State vs. Stewart, 32 Mo., 385.)

XIV. Votes cast for a candidate, who had not filed the oath required by law, were to be treated as null and void. (State vs. Boal, 46 Mo., 528.)

XV. The respondent in this case *did* receive a majority of the legal votes cast; this too, even if we admit that his opponent was qualified to receive votes.

XVI. The object of this writ is to see who was elected.

NAPTON, Judge, delivered the opinion of the court.

This is a proceeding by the State through the Attorney General, by way of information in the nature of a *quo waranto.*

The information was filed *ex officio*, without leave of the court.

This information recites in substance, that prior to, and at the general election, on the 3rd day of November, 1868, by the Constitution and laws of this State, the office of Judge of the 15th Judicial Circuit. was an elective office; that at said election there were two candidates, one of whom was the defendant, and the other one Louis F. Dinning; that Dinning

had all the qualifications required by the Constitution and statutes; that said Dinning received a majority of the votes in said circuit; that the Judges of the various election districts did regularly transmit the poll books to the proper clerks; that the clerks proceeded in due time and form to examine the returns and certified the result to the Secretary of State; that the Secretary of State opened the returns and cast up the votes as required by law; and said Secretary, in accordance with the said returns and the result, calculated and certified that said Dinning received a majority of the votes cast; that this certificate in due form was given to the Governor; but the Governor wrongfully, and without any authority of law, issued a commission to the defendant.

The change in the number of the circuit is mentioned in the information, and explained, but as that matter has already been decided, it is unnecessary to notice it further.

The information charges further, that said commission was illegal; that said defendant has no right to exercise the functions of a judge under it, and prays a judgment of ouster.

The return of the defendant to this information sets up, that said defendant was duly commissioned as judge on the 28th of April 1866; that by virtue of said commission. he entered on the discharge of the duties of said office; that this commission authorized him to perform the functions of said office until his successor was legally elected, commissioned and qualified.

The return further avers, that at the election in November, 1868, he was a candidate, and the only qualified candidate for said office; and proceeds to enumerate his qualifications as to age, residence, taking the reqired oaths, &c.

The return then proceeds to set forth at length, that Dinning, the competitor of defendant, for said office, was under age, had not taken the reqired oaths, was not a citizen of the United States for five years, nor a qualified voter, and had not taken the oath of loyalty; that he was under thirty years of age; that he had been in armed hostility to the United States. and given aid and comfort to persons engaged in such hostili-

ties and had adhered to the enemies of the United States and sent them money, goods and letters,—that he was a member of the Golden Circle, and Sons of Liberty ; that those who voted for him were not qualified electors; and that, notwithstanding said certificate of the Secretary of State unlawfully made, the Governor by virtue of his power under the constitution had given the respondent a commission, that he had decided and determined upon all the facts before him that said Dinning was ineligible and therefore refused to give him a commission, and issued one to the respondent.

A replication was filed by the Attorney General, reasserting the allegation of the petition, and denying various statements in the return.

Upon motion of the Attorney General, all that portion of respondent's answer containing allegations of his qualifications, and allegations of Dinning's disqualifications, by reason of non-age, absence from the State, failure to take the oath, &c., was stricken out at the last term of the court.

An amended return was filed—January Term 1873, setting up, as before, the election and commission in 1866—that the defendant was the only qualified candidate at the election in 1868, and that he was commissioned by the Governor as before stated.

At the same term a plea was filed to the jurisdiction of this court, alleging as grounds :

First—That the court had not granted leave to file said information.

Second—That there is no charge of usurpation of office ; nor

Third—No specification of particular acts of usurpation.

Fourth—That the writ is unsupported by affidavit.

Fifth—That the proceeding is a criminal one for an indictable offense, and therefore, as it did not arise in the land or naval force, or in the militia when in actual service, was not within the jurisdiction of the court; that other remedies were provided by statute ; that this court had no power to summon juries, and therefore no right to try the case.

This plea was overruled at the present term of this court,

and then the defendant filed his motion for judgment on the pleadings. This motion was based on the ground, that the respondent had been commissioned by the Governor, as the pleadings admitted, and this commission was conclusive in this proceeding by the State for usurpation of office; that the Governor is a co-ordinate and independent branch of the government, and his acts in that capacity not liable to be examined or reviewed by this court; that in this proceeding especially, there is no power to question the Governor's commission, however it may be in informations at the relation of some person claiming the office, or in a contest between parties under legislative provisions; that the executive had a right to go behind the returns in the office of Secretary of State, and to disregard the Secretary's certificate, and therefore the allegations in regard to these returns and certificate are of no importance and entirely nugatory in the trial of this information.

This motion for judgment on the pleadings presents the questions which we consider decisive of this case, and they are:

First.—As to the jurisdiction of this court.

Second—Assuming the jurisdiction to try official informations in the nature of a *quo warranto*, it is then necessary to determine whether the commission of the Governor is conclusive in the case.

Third—Can the Governor, in issuing a commission for an elective office, disregard the returns in the office of the Secretary of State and the certificate of said Secretary, and issue a commission to the person reported by the Secretary as having a minority of the votes in the returns on file in his office.

Fourth—Whether the answer in this case or return requires this court to examine the allegation, that said defendant was elected by reason of the disqualification of his competitor.

Fifth—Whether the allegations in the return, that defendant was elected by a majority of the qualified voters, notwithstanding the certificate of the Secretary of State, requires or authorizes an examination into the qualifications of electors in this proceeding.

Sixth—The validity of the plea of an election and commission in 1866 as a defense in this case.

1. The jurisdiction of this court of informations in the nature of a *quo warranto*, whether filed on the relation of some private person (by leave of the court,) or by the Attorney General *ex officio*, must be regarded as settled. The cases hereinafter cited on the second point are all cases in which the jurisdiction was exercised without question, and the cases, in which the question has been raised, have been determined in the same way. Whether this court will exercise jurisdiction in cases of information on the relation of a private person is another matter, depending somewhat on the discretion of the court, and where the statute has provided other tribunals for their adjudication having all the power of this court, (subject to appeal) and more facilities for the trial of issues that may arise, this court has generally declined the investigation of such cases. (State *ex rel.*, Stewart vs. McIlhaney, 32 Mo., 382; State *ex rel.*, Hequembourg vs. Lawrence, 38 Mo., 535.)

As to the position assumed in the plea to the jurisdiction, that its exercise by the court conflicts with the 14th section of the Bill of Rights prohibiting criminal informations for indictable offenses, it is sufficient to say, that the provision in the constitution giving this court power to issue writs of *habeas corpus, quo warranto,* &c., and to hear and determine the same, necessarily assumes that such writs and informations are not criminal informations in the sense of that section. Nor can the 17th section of this bill of rights, which declares the right of trial by jury inviolate, be understood to require this court on *habeas corpus* or *quo warranto*, or *certiorari*, to summon juries; that provision being manifestly applicable to criminal proceedings proper. These informations in *quo warranto*, though originally criminal proceedings, have been long regarded as purely of a civil character, though the power of fine is still given to the court.

2. The next inquiry is, whether in this proceeding the Commision of the Governor is conclusive. That it is not conclusive in informations on the relation of some person claiming

the office is conceded; but it is insisted in the motion for judgment on the pleadings, that in this proceeding by the State through its law officer, this court can look no further than the Commission of the Governor, and that no allegations will be permitted to deny its legality or validity.

This question was before this court as early as 1836, in the case of Judge McBride, (4 Mo., 303.)

That was an information in the nature of a *quo warranto*, filed by the Attorney General *ex officio*, to oust Judge McBride from the office of Circuit Judge. The defendant pleaded a commission of the Governor. The court, however, disregarded the commission, and determined that by the constitutional amendments his office was vacated, notwithstanding his commission.

The case of the State *ex rel.*, Attorney General vs. McAdoo, (36 Mo., 453,) was also a direct proceeding by the State, and the defendant in that case claimed the office by reason of a commission of the Governor under an appointment, and the court held the appointment and commission void, and gave judgment of ouster.

The case of the State *ex rel.* Attorney General vs. Steers, 44 Mo., 225,) was also a direct proceeding by the State through the Attorney General to oust the defendant from the office of sheriff of Ralls county. The defendant set up and relied on a commission by the Governor, issued on a certificate of his election by the clerk of Ralls county. The court gave judgment against the the defendant, notwithstanding his commission, and in the opinion it was observed, (p. 227,) "a person derives his title to an office by his election and not by his commission, and if he holds and exercises the functions of an office without having been legally elected, it is unlawful holding, and he may be ousted at the instance of the State, notwithstanding his commission." There were other points in that case which we will refer to hereafter.

In State *ex rel.* Attorney General vs. Bishop, and State *ex rel.* Attorney General vs. Hays, (44 Mo., 230,) the same doctrine was held.

Apart from these five decisions, which would seem conclusive on this court, no reason is perceived why the Governor's commission should be more efficacious in a proceeding by the State through its official organ in this court, than in a proceeding filed by leave of the court in the name of the Attorney General or Circuit Attorney on the relation of some private person. The question raised by either form of proceeding is, whether the defendant is usurping an office—whether he is exercising functions rightfully or without warrant of law. It is not whether the relator or any one else is *de jure* entitled to it. There are no doubt decisions in some of the States which maintain, that where the relator is the person claiming an office, his right to the office will be examined and determined, thus treating the proceeding as an ordinary action at law between plaintiff and defendant, the relator occupying the position of plaintiff, and of course having on him the burden of proof. But in such cases the departure from the common law rules, and from the practice under the statute of Anne, is so apparent, that it is probable this statute is not in force where such opinions prevail, or if re-enacted, it must be with material modifications. Our statute, which is in most respects a literal copy of the statute of Anne, has adopted the English construction and practice, and authorizes a judgment of ouster and a fine, but only authorizes a judgment for the relator for costs.

Neither here nor under the Statute of Anne is the relator necessarily a claimant of the office alleged to be usurped by the defendant. The information is filed by the proper officer " at the relation of any person desiring to prosecute the same;" whether the relator is a proper person and will be allowed to file such a proceeding is a preliminary enquiry, for the Court, and on that inquiry, whether made before or after the information is filed, the Court will ascertain what interest the relator has in the information. It is well settled in England, that the relator, though not necessarily a claimant of the office, must have a special interest in the matter of enquiry. Tancred in his work on this subject states the English rule thus :

" Where a person is a perfect stranger to a corporation, though his situation may not absolutely disqualify him from the right to examine into the title of a corporation, yet, as Lord Kenyon observed, he ought to come with a very fair case in his hands.

But a slight interest will obviate this objection ; for where the relator appeared to be an inhabitant of Harborough, and by charter the government of the town and all the people therein was vested in the mayor and chief burgesses, the court thought that the clause gave the relator a sufficient interest to entitle him to an information questioning the right of the defendant to the place of a chief burgess." (Tancred. p. 45.)

From this it seems that great liberality prevailed in England in the construction of the statute of Anne, and the cases there are numerous, in which a mere stockholder is allowed to be relator in an information against a director or other officer, although the stockholder asserts no claim to the office himself.

However this might be, the cases of information on the relation of private persons are numerous in this court, and in no instance, so far as we have observed, has it been determined that the Governor's commission is conclusive.

As the officer derives his title from the election, and the commission is merely evidence of his election, it must necessarily be regarded as only *prima facie* evidence, unless the Executive is exclusively vested with the power to determine upon the results of elections.

Now in informations on the relation of a person claiming the office, the Court can give no judgement for the relator except so far as costs are concerned, and the relator's title is not necessarily examined into, except so far as it may incidentally or indirectly affect the right of defendant, and this being the rule in regard to such informations, *a fortiori* it must be the rule in a proceeding where there is no relator, and which is instituted as a matter of right by the State. To hold otherwise in either class of informations would be to

sanction a disregard of the constitution by the Executive in respect to elective officers, and leave the party injured without means of redress.

Third—The next question to be examined is the right of the Governor to set aside the returns in the office of the Secretary of State, and the certificate of this officer conforming to the returns, and to give the commission to the candidate appearing from these returns and certificate to have received the smaller number of votes, on the ground that the candidate elected was disqualified, or that he received votes of disqualified electors.

This question is an important one, in view of the result of a decision either way, not merely as the rights of parties in this case may be involved, but as it may affect a proper construction of the constitutional power of the different departments of the State Government.

The question in this case is not, whether the Governor may go behind the certificate of the Secretary of State and look into the returns filed in that office to see if the certificate is warranted by these returns, or is false, but whether he can disregard both the certificates and the returns on file in the Secretary's office, and give the commission to the candidate appearing to have the minority vote, upon the ground, that the candidate having the majority of votes is personally disqualified or received a sufficient number of the votes of electors who were disqualified from voting.

The Governor, under our Constitution and laws, is an executive officer, not a judicial one. He is provided with no means of investigating questions of fact. In the matter of elective officers he is simply authorized to issue commissions. (Const., Art. 5, § 25; Stat., p. 570, § 32.)

It could hardly be maintained, that upon an *ex parte* affidavit or statement he would be warranted to disregard official returns, yet he has no means of resorting to any other kind of evidence. He is relieved of all responsibility by issuing a commission to the person who appears on the records filed at the seat of government to be entitled to it. Though

these records may not be conclusive in investigations in either contested elections or judicial proceedings, the Governor at least is concluded by them, for he has no means of ascertaining their truth or falsity. His official duties in this matter are purely ministerial This is the rule as established by the decisions of this Court, in regard to all ministerial officers. (State, ex rel., Bland vs. Rodman. 43 Mo., 257.)

It applies to the Secretary of the State, and to the clerks of the counties, in the exercise of the functions respectively confided to them in regard to elections. " The law " say the Court, in State vs. Rodman, (43d Mo. R.) " does not seem to have invested in the Secretary, any discretion in the premises. It requires him to perform the act of opening and counting the returns. It is the law declared by this Court as well as by the general current of authority, that a County Clerk, or the Secretary of State, in opening and casting up votes, acts ministerially and not judicially. The matter of determining upon the legality of votes is a judicial function, to be passed upon before a tribunal competent to make an adjudication where the parties interested may be heard."

The same point was so held in State, ex rel., Attorney General vs. Steers, 44th Mo., p. 223. There it is said, in reference to the return of the Clerk of Ralls County :

" If the clerk has sufficient mathematical ability to correctly count up returns, he is perfectly qualified for his office, for that is the only duty devolved on him by law.

To determine upon the legality of votes is a judicial proceeding before a court competent to hear and adjudicate, where the parties interested can appear and present their respective claims.

To allow a ministerial officer arbitrarily to reject returns at his mere caprice or pleasure, is to infringe or destroy the rights of parties, without notice or opportunity to be heard— a thing which the law abhors and prohibts. Admit the power, and there will be no uniformity. One convassing officer will reject for one thing, and another for a different matter, and no man can tell whether he is legally elected to

an office, until he consults the notions of a canvasser. The exercise of such a power is subversive of the rights of the citizen, and dangerous and fatal to the elective franchise. But it is enough to say that the claim is utterly unauthorized. The law has provided tribunals with ample power to hear and determine all questions pertaining to elections, and pass upon the validity of votes, where the parties interested can appear and have a fair trial upon pleadings and proofs.

When a ministerial officer leaves his proper sphere and attempts to exercise judicial functions, he is execeeding the limits of the law and guilty of usurpation."

This language is strong, but we think the conclusion is right, and the reasoning is as applicable to the Governor acting in a ministerial capacity as to the Secretary of State, or the clerks of the counties, or any other officer entrusted by law with the duty of canvassing and counting up returns of an election. The Governor, although the chief executive of the State, and entrusted in many cases with the power of appointment, yet where he issues a commission for an elective office is simply performing a ministerial duty in which he must necessarily be governed by the returns, as they appear in the proper office at the seat of Government, or by the certificate of the officer who receives and opens the returns. He has no means of ascertaining, whether illegal votes have been given, or whether opposing candidates are disqualified. These matters, and others of a like character, may be inquired into elsewhere, and ample provision is made by law for this purpose.

In opposition to this view we have been referred to the case of State, ex rel., Bartley vs. the Governor, 39 Mo. 392. That was an application to this Court for a mandamus on the Governor, requiring him to issue a commission to the relator in the case, who claimed to be elected Judge of the County Court of Callaway county. The mandamus was refused on the ground that this was an executive function entrusted by the constitution to a co-ordinate branch of the government, and that it was not in the province of the judi-

ciary to interfere. Whilst there are observations made by
the Judge who delivered the opinion of the Court in that
case, which may seem inconsistent with the positions assumed
now, and in regard to which I do not express any opinion for
myself or others, it is obvious that the decision does not touch
the question now under consideration, and that the remarks
of the Judge are to be understood in ·connection with the
question raised and discussed in that case. This is not an
application for a mandamus. The Governor has acted—has
issued a commission, and the only question is as to the val-
idity of this commission.

The Governor is entrusted by the constitution with author-
ity to issue commissions to all officers elected or appointed—
Art. 5, § 25. That neither this Court nor any other branch
of the judiciary can interfere with the exercise of a purely
political power, confided by the constitution to the Executive,
is clear. Whether the issuing of commissions to elective
officers, is one of those political functions which the judiciary
cannot compel the Governor to perform, it is not important
in this case to inquire, but that the Governor, in the perform-
ance of this function, must be controlled by the laws
regulating elections, and by the evidence furnished him
under those laws, and cannot institute inquiries into facts
outside of the records in·the public offices is, in our opinion,
the necessary result of the purely ministerial character of the
act. The act is purely ministerial, although confided to the
Governor in his political capacity. Any other construction
would open the way to endless abuses, and tend to destroy the
elective franchise. The people of the State have declared
certain offices, and among them judicial offices, elective, and
the Constitution and laws have provided the mode and
manner of conducting elections and ascertaining their result.

If the clerks falsify the returns, or if illegal votes are cast,
or ineligible candidates get a majority of votes, ample means
are provided to correct the errors or frauds through judicial
investigations, before tribunals appointed for that purpose.
The Executive has no such judicial machinery furnished him

State ex rel, Att'y. Gen. v. Vail.

—no means of trying facts—and his information must be *ex parte.*

Whether he assumes to have personal knowledge of the disqualifications alleged, or the illegality of votes, or relies on the statements of others, the person returned as elected has no notice, and can have none, and therefore no opportunity of being heard in his case; in short, the issue of a commission to an elective officer is a ministerial act, though confided by the constitution to the Governer in his political capacity.

Fourth—But it is said in this case, that although the Governor had no right to disregard the official returns in the office of the Secretary of State, and issue a commission to the defendant, whom these returns showed not to be elected, yet that this court will now investigate the question of the eligibility of the opposing candidate; and, upon ascertaining that he was disqualified, will therefore conclude that by a sort of a *post liminium* rule the commission was, as it turns out, rightly issued, it being conceded that on *quo warranto* the court may, although a Governor cannot, go behind the certificate of the Secretary.

There are several objections to this position, either of which we think sufficient.

In this proceeding by the State, the eligibility of Dinning (who received the highest vote) is not in question, unless we assume that votes cast for an ineligible candidate are void, and of no effect, and that the qualified candidate is elected, whatever may be the majority against him. It is said, that opinions to this effect are entertained and asserted by writers on constitutional law, but we have been referred to no judicial decision to this effect.

In Gulick *vs.* New (14 Ind., 102) it was held, that where the voters were legally bound to know that a candidate was ineligible, the votes cast for such candidate count for naught, and the case is one of a judge being voted for to fill an office, which by the constitution a judicial officer was not allowed to hold.

But in the case in Indiana it is conceded, that where the

candidate receiving the highest number of votes is ineligible by reason of a cause which the voters were not bound to know, such as non-age, non-residence, want of naturalization, &c., the result is a failure to elect.

In the State of Wisconsin vs.Giles (1 Chand. 112) the court were of opinion that "the mere ineligibility of a candidate does not render void the vote cast for him; that such vote should be counted, and that in the event of such ineligible person having the highest number of votes, the person having the next highest number is not thereby elected." This opinion was reiterated by the same court in State vs. Smith (14 Wis. 498.)

In Commonwealth vs. Cluly, 56 Pa. (State R.) 270, it was held, that the votes cast at an election for a disqualified candidate were not nullities. Judge Strong, who delivered the opinion of the court, says: "Even in England it has been held that votes for a disqualified person are not lost or thrown away so as to justify the presiding officers in returning, as elected, another candidate having a less number of votes, and if they do so, a *quo warranto* information will be granted against the person so declared to be elected, on his accepting the office. Under constitutions such as ours are, there is even greater reason for holding that a minority candidate is not entitled to the office, if he who received the highest number of votes is disqualified." In State *ex rel.* Stone vs. Garland, 18 Lou. 517, and 20 Lou. 114, the same opinion is expressed. The other American authorities seem to be to the same effect. (13 Cal. 152; 25 Maine 568, referred to in 38 Maine appendix, opinion of the Judges; 12 Ga. 23; see Dillon on Municipal Corporation, 176, § 135.)

In England the general principle is stated thus by Tancred:

"The general rule upon this subject is, that where a person proposed as a candidate is unqualified, votes given to him after the discovery and notice of his want of qualification are thrown away, and that the candidate who, next to the person disqualified, has the greatest number of good votes, is to be considered as duly elected." This seems to favor the view of

the Indiana Court in the case of Gulick vs. New; that such disqualifications as are merely personal, and not patent to the voters, such as that the candidate is not of age, has not resided the requisite time in the State or district, is not a naturalized citizen, or is a member of some secret society disaffected to the Government, or had been engaged in hostility to it, would not have the effect of electing the minority candidate; and such conclusion would appear to conform to our system of elections. To declare a candidate for an elective office elected, who has received but few votes, on the ground that his competitor, who received perhaps twice as many, was disqualified, would not accomplish the will of the electors. The object of an election is to ascertain the choice of the majority. If a disqualified candidate receives a thousand votes and his competitor only a hundred, to pronounce the latter elected is not in accordance with any ascertained will of the electors, unless it may be inferred that the votes for the disqualified candidate were cast with a knowledge of his inability to take the office—an inference which could not be drawn where the disqualifications are such as are enumerated in the pleadings in this case.

It is unnecessary to determine whether it would be the rule, in any case of disqualifications whether patent or latent.

5th. The next inquiry is the allegation in the return or answer, that the defendant was elected by a majority of the qualified voters. The court might pass over the plea as evasive and equivocal, but conceding it to be an indirect assertion that the defendant was elected by reason of the number of illegal votes cast for his competitor, the question is presented, whether the court will in this proceeding undertake to examine the truth of this allegation. In our opinion, we have no such power, for,

First—This is not a proceeding against Dinning, who is alleged to have received illegal votes, nor is Dinning the relator claiming the office, nor are his rights in any way to be determined in this case. He is not *de facto* Judge, nor can we assume that he will be in any result of this proceeding. He has no commission, and if the Governor declines to com-

mission him, according to the decision in the case of Bartley (39 Mo. R. 392,) this court has no power to control the Governor's action.

Secondly—This court in the present information has no concern with, nor power to inquire into, the qualifications of electors. Had the proceedings been directly on the relation of Dinning, the same principle would obtain.

The English law on this subject cannot be, of course, entirely applicable here, but the leading principle governing the courts there may be adopted as a safe guide in determining similar questions here. Tancred states in his treatise on this subject in regard to proceedings on informations in the nature of a *quo warranto* on the relation of a private person, that " where there is no method of prosecution by which the title of electors may be questioned in the first instance, their validity may be inquired into from the necessity of the case, upon an information against a person elected by them."

In Symmers and others vs. Reg. (Cowp. 489,) Lord Mansfield observed: "Whether on the trial of the respective rights of the several defendants, the elected, the rights of the voters to their corporate franchises can be gone into without any notice, either on the record or collaterally, has never been settled, though it has been touched upon in several cases, and it was only settled that no 'corporator was bound by surprise to go into the original qualifications of any corporator in possession, who voted for him at his election, especially without notice." In this case Mr. Buller, of counsel, conceded that a latent objection to the qualifications of electors could not be examined, but insisted that where the elector, who was a burgess or councilman, had been himself ousted by *quo warranto,* the record of such ouster was evidence in that case, although the defendant was no party to that suit, because of the public notoriety. But Lord Mansfield said: " The next, which is an objection of less difficulty, is that the Judge below has refused to go into the qualification and capacity of several freemen and common council-men who offered their votes. Let us state the objection as it is put and examine it. The proposi-

tion is, that the Judge, on the information, should have done exactly what he ought to have done if the title of these persons, who were common councilmen *de facto*, had actually been in question before him on *quo warranto*. They were *de facto* members of the corporation, admitted, sworn, and in the actual enjoyment of the office. The question is, whether the judge, collaterally at the trial, ought to have gone into the validity of these men's titles. Could the mayor have gone in to it at the election? I am very clear he could not. There are modes sufficiently open to the partiality of returning officers, without adding more. Where the qualification is to be judged of by him, it cannot be avoided.

"In cases of elections in the city of London, certain qualifications are required at the polls, therefore it must be seen that in some degree the candidates have these qualifications. So where an election is to be tried, which may involve many other rights. But where the right of election is in freemen, in their corporate description, whether they were duly chosen is not to be tried at the election of a third person, but they must be properly ousted." See also Rex. vs. Mein, 3 Term R., 596; Rex. vs. Latham, 3 Burr. 1485.

The result of the English decisions is, that where the right of electors who were such by reason of their filling certain corporate offices is questioned, it cannot be done collaterally in an inquiry into the title of the person elected, but must be done in a direct proceeding against such elector; but where the electors are not so by reason of filling corporate offices, but merely as citizen voters, such an inquiry is legitimate in an information against the person elected, where there is no other mode provided for their examination. (Tancred, p. 199.)

Now, the election law in this state affords ample means of contesting elections on the ground of the illegality of votes cast; but a notice is required, and a specification of the names of all the voters objected to (1 W. S., p. 573, § 54). If it be admitted that this inquiry into the qualifications of voters is still open in a proceeding in *quo warranto*, still the court

would certainly require, what the statute requires in contested elections—a previous notification and a complete list of the voters whose qualifications are meant to be disputed. The plea in this case simply is, that the defendant received a majority of legal votes and is only by implication an allegation, that illegal votes were cast in favor of his competitor, and contains no specifications of the number or names of such alleged illegal voters, and gives no opportunity to the opposite party, had there been any in the case, to prepare testimony on this point. But had the plea been more specific, the same conclusion in the proceeding would have been reached for the reasons heretofore indicated.

6. There is another point made in the return which it is proper to notice. The defendant sets up a commission in 1866, and avers that he holds over under that commission, as no successor has been elected, commissioned and qualified. This is disposed of by reference to the case of Steers (44 Mo. R. 226), where a similar plea was filed and disposed of in these words: "The evasive answer, that no successor to the defendant had ever been qualified, is full of duplicity, and may be construed to mean, that he holds under either election, no other person having succeeded him in the office. The allegation in the information is a plain, simple one, requiring a denial, which the defendant has not seen proper to make, * * * It is true that by force of existing law the officer holds over until his successor is elected and qualified; but if by unlawfully detaining his certificate and commission, he prevents the person legally entitled thereto from qualifying, he will not be allowed to set up this as a defense and reap a benefit from his own wrong."

The importance of this case, affecting the elective franchise generally, and particularly the rights of the people of the circuit and of the defendant, has induced a careful examination of all the points presented, although, perhaps, some of them were not essential to the conclusion reached. These conclusions have already been stated and may be substantially repeated in a few words.

We are of the opinion that the court has jurisdiction of the information filed, and that the commission of the Governor is not conclusive on the trial, and that the returns and certificate of the Secretary of State made in conformity to the thirty-second section of the law concerning elections (1 Wagner, p. 570) are conclusive on the Governor; that he cannot judicially inquire into the qualifications of candidates ; that he is furnished by law with no means of prosecuting such inquiries, and therefore the Constitution did not, in requiring him to issue commissions to elective officers who had the highest number of votes, authorize him to inquire into facts of which the records in the public offices could give him no information.   That the commission to the defendant being admitted by the pleadings to have been issued without regard to, and against the returns on file in the office of the Secretary of State, and without regard to the certificate of said Secretary, which was in conformity to the returns, is not a valid title to said office of Judge of the 26th Circuit.

We are further of opinion, that the alleged ineligibility of Dinning, who is not a party to the proceeding, did not authorize a commission to defendant, who received a less number of votes; and that this court can not in this proceeding and under the pleadings inquire into the qualifications or disqualifications of Dinning, who received a larger number of votes than defendant.

We shall order a judgment of ouster to be entered.   The other Judges concur.