[No. 13415. In Bank. — December 30, 1889.]

THE PEOPLE EX REL. CHARLES J. SWIFT, APPELLANT, *v.* HENRY BINGHAM, RESPONDENT.

QUO WARRANTO — JURISDICTION OF SUPERIOR COURT — POWER OF BOARD OF SUPERVISORS TO JUDGE OF ELECTION — CONSOLIDATION ACT OF SAN FRANCISCO — CONSTITUTIONAL LAW. — An action brought by the attorney-general to oust a person from the office of supervisor of the city and county of San Francisco, and to recover the statutory penalty of five thousand dollars for usurpation of office, is in the nature of *quo warranto*, and within the constitutional grant of jurisdiction to the superior court. This jurisdiction, being conferred by the constitution, cannot be abridged or taken away by the legislature, and the provision of the consolidation act, that the board of supervisors "shall be the judge of election returns and qualifications of its own members," was superseded by the present constitution, at least so far as it could be held to have conferred exclusive jurisdiction upon the supervisors. (SHARPSTEIN, J., and THORNTON, J., dissenting.)

ID. — INTEREST OF RELATOR — RECOVERY OF PENALTY. — The relator in such action need not be shown to be entitled to the office usurped by the respondent, nor does the recovery of the penalty provided for by statute depend upon the relator's title. The recovery of the fine is for the benefit of the state, and must be paid into the state treasury, no matter who is the relator.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco.

The facts are stated in the opinion of the court.

*Attorney-General Johnson*, and *Horace W. Philbrook*, for Appellant.

*J. D. Sullivan*, for Respondent.

WORKS, J. — This action is brought in the name of the people of the state of California, by George A. Johnson, attorney-general, upon the complaint of Charles J. Swift, against the respondent, to oust him from the office of supervisor of the city and county of San Francisco, on the ground that he was not at the time of his election a resident of the ward of which he was elected, and to recover the penalty of five thousand dollars provided for by the statute in such cases.   There was a demurrer to the compliant on all of the statutory grounds, which was sustained, but we are informed by the briefs of counsel that the demurrer was sustained on the sole ground that the court had no jurisdiction to hear and determine the cause.   This was based upon the ground, which is attempted to be maintained in this court, that by the consolidation act of the city and county of San Francisco the board of supervisors " shall be the judge of election returns and qualifications of its own members." (Consolidation Act, sec. 67, p. 16.)

It was held in an early case that similar language to this, applied to the common council of the city of Los Angeles, gave to the council the exclusive right to pass upon and determine the election and qualification of its own members, and that the superior court had no jurisdiction of an action in the nature of a *quo warranto* to determine the same question. (*People* v. *Metzker*, 47 Cal. 525.)   It was said in that case: "The tenth section of the act of March 11, 1850, to provide for the incorporation of cities (Stats. 1850, p. 88), the act being applicable to that city at the time of the alleged election of the relator, provides that the common council 'shall judge of the qualifications, elections, and returns of their own members.'   The eighth section of article 4 of the constitution, relating to the legislative department of the state government, is as follows: 'Each house shall choose its own officers, and judge of the qualifications, elections, and returns of its own members.'   The words of the

constitution and of the statute, being identical, should receive the same construction. It is settled beyond controversy that those words of the constitution confer upon each house the exclusive power to judge of and determine the qualifications, elections, and returns of its own members; and it follows that the common council of a city to which that section of the act is applicable possesses the like exclusive authority to judge of and determine the qualifications, elections, and returns of its own members. The court, therefore, had no jurisdiction of the action."

As to the effect of such language, the opposite conclusion was reached by the court of appeals of New York in a well-considered case. (*People* v. *Hill*, 80 N. Y. 117.) There it was said: " But it is further urged that the clause of the charter—taken without regard to that likeness—gives exclusive power in the first instance to the board. It does not, unless it takes away jurisdiction from the courts, or in this case, from the supreme court of the state. That court, from its origin, has had general jurisdiction in law and equity. (Const., art. 6, sec. 6.) Within that jurisdiction formerly fell the proceedings by *quo warranto*, and by information in the nature thereof, and now falls the action by which the remedies once got by them are yet reached. The jurisdiction is not taken away by a statute, unless there be express words in it to take it away. ' It is a maxim in the common law that a statute made in the affirmative, without any negative expressed or implied, doth not take away the common law.' (1 Coke, 2 Inst., 199, c. 20–24; *Rex* v. *Moreley*, 2 Burr. 1040; and see, per Cowen, J., *In re Heath*, 3 Hill, 52; *People* v. *Directors B. and R. T. Road*, 23 Wend. 222.) That rule applies here. There is no word in the clause in the charter that, either in terms or by necessary implication, expresses a legislative purpose to take from the supreme court its jurisdiction, and to make the power of the board exclusive, and its judgment

final and conclusive. It creates a cumulative jurisdiction; it enables the board to pass speedily and by simple proceeding upon the right to membership in it, so that it may not be hampered in the performance of its functions; and when it has done so, the board, as composed thereby, is for the time a legal board, and its doings authoritative. The courts of competent jurisdiction are not shut out, however, from inquiring in behalf of the people, the origin of all authority, into the right of any person who, by the action of the board, in fact holds a place in it, and claims thereby to exercise a public office. The officer is such as to be liable to such an inquiry in behalf of the public, and it needs express and unequivocal words, or an irresistible implication, to take away from the judiciary a jurisdiction always possessed. The supreme court has, by its constitution, control over all inferior jurisdictions, of which the board of aldermen is one. To take away its general superintending power, the language to that end should be clear and unequivocal, and not to be collected from doubtful inferences or incomplete analogies."

We are inclined to the opinion that the rule laid down by the case last cited is a correct one, but it is unnecessary to so hold in this case.

In the case of *People* v. *Metzker*, the question as to the constitutionality of the statute, which is the controlling question in this case, was not presented or considered. The constitution then in force did not in terms confer jurisdiction on the superior court in this class of cases. The present constitution expressly confers such jurisdiction. Section 5 of article 6 provides: "The superior court shall have original jurisdiction in all cases in equity, and in all cases at law which involve the title or possession of real property, or the legality of any tax, impost, assessment, toll, or municipal fine, *and in all other cases* in which the demand, exclusive of interest or

LXXXII. CAL.—16

the value of the property in controversy, *amounts to three hundred dollars.*"

This is an action at law, and is for the recovery of five thousand dollars. Therefore the section of the constitution referred to gave the superior court jurisdiction. (*People* v. *Perry,* 79 Cal. 106.)

The same section provides further: "Said courts and their judges shall have power to issue writs of *mandamus, certiorari,* prohibition, *quo warranto,* and *habeas corpus,*" and confers jurisdiction on said court in cases of this kind. (*People* v. *Perry, supra; State* v. *West Wis. R'y Co.,* 34 Wis. 197; *State* v. *Leatherman,* 38 Ark. 81; *People* v. *Boughton,* 5 Col. 487; *Florida* v. *Gleason,* 12 Fla. 190; *People* v. *Keeling,* 4 Col. 129; *State* v. *Vail,* 53 Mo. 97.)

In *People* v. *Perry,* we said: "*Quo warranto* was a case at law; it afforded the legal remedy for the usurpation of an office; and we think this court retains jurisdiction of the *case,* notwithstanding the legislature may have changed the procedure, enlarged the remedy, and given it a new name. To hold otherwise would be to admit a power in the legislature to abridge our jurisdiction, and take from parties the right of appeal, by the easy device of a change of procedure, in many cases, where the right and jurisdiction are unquestioned."

Jurisdiction in this class of cases having been conferred on the superior court by the constitution, such jurisdiction could not be taken away or abridged by the legislature, and a statute existing at the time the constitution was adopted conferring jurisdiction on some other tribunal was superseded by such constitutional provision, so far, at least, as it could be held to have conferred exclusive jurisdiction upon such tribunal. (*Haight* v. *Gay,* 8 Cal. 300; 48 Am. Dec. 323; *People* v. *Reed, supra; Montrose* v. *State,* 61 Miss. 429; High on Extraordinary Legal Remedies, sec. 615.)

It is contended by the respondent that the demurrer to the complaint was properly sustained because the

action was brought on the relation of Charles J. Swift, and it was not shown that he was entitled to the office, or that any one else claimed to be entitled to the office, and for that reason no right to recover the penalty of five thousand dollars was shown. The statute authorizes the attorney-general to bring the action in the name of the people of the state upon his own information *or upon the complaint of a private party.* (Code Civ. Proc., sec. 803.)

This is a conclusive answer to the contention that a party not entitled to the office cannot be the relator. Section 809 of the Code of Civil Procedure is equally conclusive as to the right to recover the penalty where the relator is not shown to be entitled to the office. It provides: "When a defendant against whom such action has been brought is adjudged guilty of usurping or intruding into or unlawfully holding any office, franchise, or privilege, judgment must be rendered that such defendant be excluded from the office, franchise, or privilege, and that he pay the costs of the action. The court may also, in its discretion, impose upon the defendant a fine not exceeding five thousand dollars, which fine, when collected, must be paid into the treasury of the state." The recovery of the fine is for the benefit of the state, and must be paid into the state treasury, no matter who is the relator.

Judgment reversed, with instructions to the court below to overrule the demurrer to the complaint.

Fox, J., McFarland, J., and Beatty, C. J., concurred.

Paterson, J., concurring.—I concur. Each house of the legislature derives its power to "choose its own officers, and to judge of the qualifications, elections, and returns of its own members," directly from the constitution. The fact that the words of the statute are identical with the words of the constitution is a matter of no importance. The power of the court to inquire on behalf

of the people into the right of any person to hold and exercise a public office is derived from the same source as that of the legislature to "choose its own officers," etc., i. e., from the people themselves.

SHARPSTEIN, J., dissenting.—I dissent. In *People* v. *Metzker*, 47 Cal. 524, the precise question involved in this case was decided. The act of March 11, 1850, which was held to be applicable to the city of Los Angeles, provided that the common council should judge of the qualifications, elections, and returns of their own members.

Mr. Justice Rhodes, speaking for the court, said: "The eighth section of article 4 of the constitution, relating to the legislative department of the state government, is as follows: ' Each house shall choose its own officers, and judge of the qualifications, elections, and returns of its own members.' The words of the constitution and of the statute, being indentical, should receive the same construction. It is settled beyond controversy that those words of the constitution confer upon each house the exclusive power to judge of and determine the qualifications, elections, and returns of its own members; and it follows that the common council of a city, to which that section of the act is applicable, possesses the like exclusive authority to judge of and determine the qualifications, elections, and returns of its own members. The court, therefore, has no jurisdiction of the action."

The language of the consolidation act which confers all the powers which the board of supervisors of the city and county of San Francisco may rightfully exercise provides that "the board of supervisors shall be the judge of election returns and qualifications of its own members."

The language of the court in *People* v. *Metzker, supra,* is as applicable to this case as it was to that, and I am not satisfied that that case should be overruled.

THORNTON, J., dissented.