## SANTIAGO *v.* FEUILLE, ATTORNEY GENERAL.

### APPLICATION for a Writ of *Mandamus.*

No. 3.—Decided April 16, 1906.

QUO WARRANTO—INTERESTED PARTIES.—In *quo warranto* proceedings, the object of which is to recover an office, the petitioner is the real party in interest; but where the suit is in regard to the usurpation of a franchise by a corporation, The People of Porto Rico is the proper party and must be represented by the Attorney General or one of the district *fiscals.*

APPEAL—ACTION.—*Quo warranto* proceedings are considered as civil actions and an appeal may be taken from a judgment rendered therein, the same as in any other civil action.

ID.—INTERVENTION OF ATTORNEY GENERAL.—In *quo warranto* proceedings, where the Attorney General has signed the application or where the court has authorized the institution of the proceeding either at the instance of the Attorney General or of any of the district *fiscals*, the petitioner may continue the proceeding through his own attorney until final decision; and when the Attorney General has once signed the application it is unnecessary for him to sign any other document or to intervene in any other proceeding relative to the case, although he has a right to do so.

MANDAMUS—ACTS OF A MINISTERIAL OR EXECUTIVE CHARACTER.—The writ of *mandamus* will not issue to compel the performance of acts which are within the discretionary power of the official, but only to the performance of ministerial acts.

ID.—QUO WARRANTO.—The writ of *mandamus* will not issue to compel the Attorney General to file an application to institute *quo warranto* proceedings.

The facts are stated in the opinion.

*Mr. Hernández Usera* for petitioner.

*Mr. Feuille, Attorney General,* for respondent.

MR. JUSTICE MacLEARY delivered the opinion of the court.

This case arose out of a contest between the different candidates for the municipal offices of Ciales. Don José Pilar Santiago was a candidate for *alcalde* of the town, and his opponent having been awarded the election and installed in office, he instituted this proceeding to recover the office, to which he claimed to have been legally elected.

On the 13th of December, 1905, the Hon. Frank Feuille, Attorney General of Porto Rico, presented in the District Court of Arecibo, at the instance of Don José Pilar Santiago, as relator, a petition for that court to concede to him permission to present an information in the nature of a *quo warranto* in accordance with section 780 of the Revised Statutes of Porto Rico.

The said court, after various preliminary proceedings, on the 24th of January, 1906, granted the permission sought by the Attorney General. On the same date, the said district court, at the instance of counsel for the defendants, denied to Attorney Eugenio Benítez Castaño the right to be heard on behalf of the relator, on the ground that the said attorney could not appear as a representative of the Attorney General. Permission was granted the relator, Santiago, to present an information, and the same was presented on the 29th of January, 1906, signed only by Attorney Eugenio Benítez Castaño, representing the relator, and without the signature of the Attorney General. After various incidents and motions by the defendant's attorney, on the 5th of March, 1906, a motion was presented to the district court to dismiss the information

of the relator, because it was not signed by the Attorney General of Porto Rico nor presented in the name of The People of Porto Rico. On the 6th of March the attorney for the relator filed an amendment to his information, with the signature of the Attorney General, in order that it might be understood that said information had been signed by the Attorney General. After the said date, counsel for the relator requested the Attorney General that as the representative of The People of Porto Rico he should sign certain papers, and should appear jointly with the counsel for the relator in the case; but the Attorney General refused to do this, and refused to sign the papers, on the ground that the law of *quo warranto,* passed by the Legislative Assembly of Porto Rico on the 1st of March, 1902, did not require the intervention of the Attorney General in these proceedings, and that his duty was limited alone to signing the petition seeking permission to present the information; and at most to further sign the information; but that all other proceedings had to be taken and prosecuted by the relator alone through his own attorney. .

Counsel for the relator took a different view of the case, and seeks in the proceedings to compel the Attorney General by *mandamus* to sign the said papers. A rule to show cause was issued on 20th of March, and the Attorney General thereupon appeared and contested the issuance of the writ of *mandamus.*

He bases his defense on four grounds, to wit:

"First. That the facts set out by the relator in his application for the writ of *mandamus* are true in so far as they relate to the proceedings had in the District Court of Arecibo in the *quo warranto* proceedings and the fact that defendant signed as the representative of The People of Porto Rico the application for permission to present an information and the amendment to said information, and also in reference to the fact that defendant refused to sign the other papers of later date than the information presented by counsel for the relator, José Hernández Usera.

"Second. The defendant denies that in accordance with the law of

Porto Rico establishing the writ of *quo warranto,* he is in duty bound to sign any papers other than the application and the information.

"Third. The defendant respectfully alleges that it being left entirely to his discretion to sign or not to sign writings presented by counsel for the relator in the *quo warranto* proceedings, the writ of *mandamus* does not lie to compel him to affix his signature to such papers.

"Fourth. That the relator not having specified the writings which the defendant has refused to sign, it is impossible for the court to determine whether or not the defendant, as representative of The, People of Porto Rico, is in duty bound to sign such papers."

The case was submitted on oral argument by both parties, on the 26th of March, to this court and taken under advisement.

Previous to the Act of the 1st of March, 1902, establishing *quo warranto* proceedings, there was no statute in this island providing for the same. This act is said to have been taken from the English statute passed in the reign of Queen Anne, and it is in many respects similar to the Texas statute on the same subject which was based on the English statute aforesaid. By section 779 of the Revised Statutes, *quo warranto* is defined to be a writ by which The People of Porto Rico commence an action to recover an office or a franchise from the person or corporation in possession of the same. By section 780 of the Revised Statutes, the Attorney General or any *fiscal* of the district courts, either of his own accord, or at the instance of any individual relator, may present a petition to the district court of competent jurisdiction for leave to file an information in the nature of *quo warranto* in the name of The People of Porto Rico, upon which the court may take proper proceedings. By section 783 it is provided that the District court may allow the relator or any defendant such convenient time to plead as it shall deem just and reasonable. By section 784 the court on deciding the case is empowered to give judgment in favor of the relator for costs of the prosecution; or should judgment be rendered

in favor of the defendant, he is allowed to recover from the relator his costs, including a reasonable attorney's fee.

From these sections of the statute it will be seen that the rights of the relator are recognized, and he is considered as a proper party in the *quo warranto* proceedings. This we take to have reference only to the cases in which the recovery of an office is the object of the suit. In cases where franchises have been usurped by corporations The People of Porto Rico is the only proper party and should be represented by the Attorney General, or some one of the district attorneys. By section 785 of the Revised Statutes it will be seen that informations in the nature of a *quo warranto* are regarded as civil actions, it being provided that appeals and writs of error may be taken and prosecuted in such cases in the same manner as in all other civil actions.

In Texas such is the view taken of the rights and liabilities of the relator in *quo warranto* cases. In the case of *Hussey* v. *Heim,* 17 Tex. Civil App. Rep., page 153, it is announced that costs are properly awarded against the relator in a proceeding in the nature of a *quo warranto* to assert his right to an office instead of being awarded against the State where the respondent proves to be the successful party. The court in discussing the writ of *quo warranto* and in deciding this matter uses the following language:

"But the proceedings have been definitely declared by the decisions of the Supreme Court to be a civil action; and actions of the character of the present are treated to be suits for the trial of titles of the office between the relator and the respondent, in which the former is the real plaintiff. The relator simply selects this form of proceeding instead of a direct suit for the office and its emoluments. (*Jennet* v. *Owens,* 63 Tex., 268; *State* v. *Davis,* 75 Tex., 426; *State* v. *De Gress,* 53 Tex., 396; *Bell* v. *Faulkner,* 84 Tex., 189 * * *.)

"Article 1425, Revised Statutes, provides that the successful party to a suit shall recover of his adversary all costs expended or incurred therein, except where otherwise provided. When it is ascertained who is the real party, the liability for costs results from this provision. If the State is the real party it is liable, and if the relator

is the real party he is liable, as the adversary of the respondent. The relator is the real party and the true adversary, in such proceedings as this, is sufficiently obvious from its nature and purpose, if it had never been decided.''

The court rendering this decision is an intermediate court of appeal in Texas, from which writs of error lie to the Supreme Court in certain cases. This opinion was written by Mr. Justice Williams, who is now an Associate Justice in the Supreme Court. The same view of the law is taken in California, as will be seen by a reference to the Code of Civil Procedure of California, section 803, and to the following decisions of the Supreme Court of that State, to wit: *People* v. *Jefferds*, 126 Cal., 302; *People* v. *Sutter Street Ry. Co.,* 117 Cal., 612; *Boyne* v. *Ryan,* 100 Cal., 265; *People* v. *Bingham,* 82 Cal., 243; *People v. Clark,* 72 Cal., 289; *People* v. *County Judge,* 40 Cal., 480; *People* v. *N. S. F. H. & R. R. A.,* 38 id., 565; *People* v. *San Francisco,* 36 id., 605; *People* v. *Pacheco,* 29 id., 213; *Bud* v. *Holden,* 28 Cal., 139.

Reference may also be made to the following cases from other States: *State ex rel. White* v. *Barker,* 57 L. R. A., 247; *State ex rel. Crow* v. *A. T. & S. F. Ry. Co.,* 63 L. R. A., 761; *State* v. *Stein,* 14 N. W. (Neb.), 481.

The same view is taken by the Supreme Court of the United States in the case of *Boyd* v. *Thayer,* 143 U. S., 157.

In view of these authorities we are of the opinion that the relator in *quo warranto* cases, involving the right to an office is a proper party to the suit, and after the permission of the Attorney General has been obtained, or the court has granted an order permitting the information to be filed, at the solicitation of the Attorney General or one of the *fiscals* of the district courts, that the relator through his own attorney can follow up the proceedings and control the case to its final termination. And further, that, when the Attorney General has signed the petition asking for permission to present an information, it is not necessary for him to sign any other papers, or to intervene in any other or further

proceeding in the case. Of course, he has a right to do so, if he sees proper, but he is under no obligation to do so, and it is not necessary that he should do so to render such proceeding valid. His duty is at an end when he has investigated the question and determined, with a due regard for the rights of The People of Porto Rico that it is a proper case for initiation of the action by means of the writ of *quo warranto*, which decision on his part is manifested by presenting a petition to the district court for leave to file such an information.

In the present case, however, and in cases of this nature, the act which it is sought by the writ of *mandamus* to compel the Attorney General to perform is a discretionary one. He must exercise his own best judgment in determining whether or not the interest of The People of Porto Rico require that the *quo warranto* proceedings should be initiated; and the familiar principle that this court will not interfere with an executive officer in the discharge of a duty which is discretional on his part applies herein, and for that reason, if for no other, the *mandamus* herein sought should be refused. It is only where the duty is purely ministerial that a writ of *mandamus* will lie (Merrill on *Mandamus*, 33; Wood on *Mandamus*, pp. 67 and 68; *People v. Attorney General*, 41 Mich., 728). The case cited from the Supreme Court of Michigan is directly in point and holds that the writ does not lie to compel the Attorney General to file a *quo warranto*. And in a Texas case the court announces the doctrine in unequivocal terms in the following language:

"We are clearly of opinion that a *mandamus* does not lie to compel the Attorney General to bring suit in such a case. The court cannot, by the writ in question, compel an officer to perform an official duty where that duty involves a discretion on his part. Since the duty of the Attorney General to institute suits in such a case requires an investigation of the case and a determination, first, of the fact that an offense has been committed, and second, that there is a reasonable probability that it may be prosecuted to a successful issue, under

the general principle applicable to the writ of *mandamus,* the courts cannot control his judgment in the matter and determine his action. But upon the specific question there is abundant authority in support of our views (*Yates* v. *Attorney General,* 41 Mich., 728; *Boyne* v. *Ryan,* 100 Cal., 265; *Everding* v. *McGinn,* 23 Ore., 15; *Thompson* v. *Watson,* 48 Ohio St., 552; *People* v. *Fairchild,* 67 N. Y., 334; same case, 8 Hun., 334; *People* v. *Attorney General,* 22 Barb., 114).

"Being clearly of the opinion that the writ of *mandamus* which is sought in this proceeding cannot be awarded, the motion to file the petition is overruled." (*Lewright* v. *Bell,* 94 Tex., 557.)

It is unnecessary to further notice the fourth point made in the answer of the Attorney General, which would be a good one had the court proceeded that far in the consideration of this case.

Taking the view that we have of the law in regard to writs of *quo warranto* and *mandamus,* we feel it to be right and proper to refuse the writ of *mandamus* sought herein. The costs of this proceeding should be taxed against Don José Pilar Santiago, the petitioner for the said writ.

*Denied.*

Chief Justice Quiñones, and Justices Hernández, Figueras and Wolf concurred.