HARDIN *vs.* COLQUITT, Governor, *ex rel.*

1. The claimant of an office, controverting the right of an actual incumbent, though he cannot be heard by *quo warranto* to attack the legality of the election, without alleging an interest in the office as a citizen or otherwise, may nevertheless have a hearing upon such part of the case made as involves the question of whether he, and not the incumbent, received a majority of the legal votes, his pleadings being sufficient to raise an issue on each contested vote.

2. Even if contest before the executive be the exclusive remedy in cases where full opportunity has been afforded to have the contest

heard and determined, yet where a commission has issued inadvertently pending the contest, and after due notice to the governor, the remedy of *quo warranto* is available.

3. An election for the office of justice of the peace is not void by reason of one of the managers being a son-in-law of one of the candidates.

*Quo warranto.* Elections. Justice of the Peace. Before Judge SPEER. Rockdale County. At Chambers. May 28, 1879.

Reported in the opinion.

A. C. McCALLA ; A. A. ZACHRY, for plaintiff in error.

J. N. GLENN, for defendant.

BLECKLEY, Justice.

A writ of *quo warranto*, in the name of the governor, on the information of Thomas D. Swann, against John F. Hardin, was heard and determined by Judge SPEER, without a jury, the parties consenting to dispense with a jury. The controversy was respecting the office of justice of the peace in and for the 561st district, G. M., Rockdale county, and involved both the legality and the true result of an election held on the 4th of January, 1879, to fill a vacancy caused by the resignation of the late incumbent, D. O. White. The petition for the writ of *quo warranto* was filed on the 7th of February, 1879, and prayed that Hardin show cause why he held the governor's commission, and why the same should not be declared void, and be surrendered and canceled, and that a commission be ordered and issued to Swann, the relator, or that the election be declared null and void, and that such other and further order be had in the premises as might be proper.

The facts alleged in the petition were substantially the following : The election was held after only ten days' notice had been given by the ordinary ; the notice was posted in

one place only; the election was conducted and managed by three persons, one of whom (Posey) was the acting notary public of the district, but not a freeholder, and another (Adair) was the son-in-law of Hardin; the candidates were Hardin and the relator, and the declared result was sixty-four votes for the former and sixty-three for the latter, but nine of the persons who voted for Hardin (all of them named in the petition) were not qualified voters, because they had not paid the tax required of them by law for the year 1878, and three of the nine (naming them) were further disqualified by reason of non-residence, one of them residing in another district and two of them in Newton county; a fourth man of the same nine (naming him) had not been a resident of Rockdale county for six months immediately preceding the election, and a fifth one (naming him) had not been a resident of the district for the space of thirty days previous to the election; all these disqualifying facts were unknown to the relator until after the the election; these nine illegal votes being deducted, would leave Hardin fifty-five, and the relator sixty-three, a majority of eight for the latter, making him the justice of the peace elect. On the sixth of January, two days after the election, the relator notified the governor of his intention to contest said election and the right of Hardin to a commission, and also served Hardin with notice of the contest and the grounds thereof, and of the time and place when and where the relator, as contestant, intended to take testimony, giving the names of witnesses to be examined; the day set was the sixteenth of January, and the county judge, who had been agreed upon to take the testimony, was engaged in his court and could not then act, in consequence of which the matter was postponed until the twenty-third of January, when both parties appeared, and the county judge proceeded to hear evidence and reduce it to writing; whilst this was in progress, it was ascertained that a commission had been inadvertently issued by the governor to Hardin, with a *dedimus* to the ordinary, and the ordinary,

on the 23d of January, administered to Hardin the oath of office and delivered to him the commission; the notice of contest was inadvertently overlooked in the executive department, and the commission was improperly issued, as the contest was still pending, and thirty days had not expired; the relator was thus deprived of his right of going before the governor with his contest; he, nevertheless, proceeded to lay the evidence as reduced to writing by the county judge, before the governor, and requested a hearing thereon, which was denied inasmuch as the commission had been issued and delivered. The petition averred that the election was illegally conducted, and that the result was a fraud upon the relator; that the election was held without legal notice of the time and place; that Adair was an incompetent manager because the son-in-law of Hardin, one of the candidates; that Posey was not a justice of the peace of the district or a freeholder as required by law; and that said nine illegal votes were counted for Hardin, thereby materially affecting the result. It also averred that the relator had no agency in selecting the managers, and that he was not aware of their incompetency until after the contest over the election was sprung.

The respondent answered, and at the trial his counsel moved to dismiss the writ, because the relator, "by his own pleadings, shows he is not entitled to said office, because said election was not held in conformity to the law by three freeholders of said district, after advertising the same for fifteen days or more." The court denied the motion, and this is assigned as error. Evidence having been introduced (which, however, is not authenticated so as to be considered on this writ of error), counsel for Hardin, in their argument on the merits of the case, urged the court to dismiss the proceeding "because the questions at issue were determined in a contest for the office before the governor, or were such questions as could and should have been determined in said contest." Instead of so ruling, the court finally adjudged that the election was null and void because

Adair, one of the managers, was disqualified, he being the son-in-law of Hardin, that consequently Hardin was not legally elected, that his commission is void, that he do cease and abstain from any further exercise of the duties of the office, that these proceedings and the judgment thereon be certified to the governor, that the proper county officers give notice and provide for another election, and that the relator recover of the respondent his costs. The rendition of this judgment is also assigned as error.

1. The motion to dismiss should have been granted if the only question in the case had been upon the legality of the election, for the relator does not allege that he is a resident of the district, or show any interest in the controvery otherwise than as a claimant of the office. The Code lays it down, in section 3203, that the writ of *quo warranto* must be granted at the suit of some person either claiming the office or interested therein. The meaning of the language is, that it cannot be granted at the suit of any one else. *Collins vs. Huff*, this term. So much of the petition as alleged the illegality of the whole election was demurrable, and had the same been demurred to separately, should have been stricken out. But by a liberal practice, and it requires a *very* liberal practice to warrant the indulgence, the petition with this allegation in it might be retained for the purpose of trying the questions made upon the legality of certain votes, the matters of specification as to who were the illegal voters, and as to the grounds of illegality, being full and particular. Had the relator averred himself to be a resident of the district and thereby interested in the office, both branches of the petition could have been used on the trial; but as he presented himself in the character of claimant of the office by virtue of the same election which he sought to attack, and in no other character, he was not in a condition to raise any question touching the validity of the entire election, and his attempt to do so may be regarded as surplusage.

2. It was urged by the respondent that the governor's

commission to him was conclusive of his right to the office, by reason of certain provisions of the Code, and that he could not be ousted by *quo warranto*, over that commission as evidence of his title. In section 60, the Code, speaking of the governor, says: "He shall grant commissions to all such officers of this state, including senators and representatives in congress, as are required to hold them, and in all cases he may, in his discretion, issue a *dedimus protestatem* to such officers as are authorized to administer oaths, requiring the qualification of the officer elect, as provided by law, and to issue to him his commission. The forms of all commissions shall be in the discretion of the governor. Commissions thus issued are final, except where the constitution and laws otherwise provide." In sections 133 and 134 further details as to commissions are embraced, and these sections show that, as a general rule, all civil officers, except constables, are to be commissioned by the governor. In section 1329 the mode of contesting elections had by the people is pointed out, and this requires that five days' notice of the intention to contest and of the grounds of contest be given to the opposite party: that the notice shall also state the time and place of taking testimony, and the names of the witnesses; that the elect shall give the like notice as to taking testimony and the names of his witnesses; that either party may appear by himself, or attorney, or both, and cross-examine the witnesses; that any judicial officer of the county may preside to preserve order, to swear the witnesses, and see that the testimony is fairly and impartially reduced to writing, and all offered must be reduced to writing; that the presiding officer is empowered to subpœna witnesses, compel their attendance, to issue commissions to take their testimony if out of the state, and to adjourn from day to day; that the papers and proceedings or copies of them, must be transmitted to the governor, certified to by the presiding officer, or agreed to by the parties; that when the governor has notice of an intention to contest, he shall not issue the commission unti

the contest is decided, or the time has elapsed for it to begin ; that "both parties may appear by themselves and counsel and be heard before the governor, who shall have both notified of the day when he will hear the contest ;" that testimony going to prove the illegality of a vote and the want of qualification in a voter, must be taken within thirty days of the day of the election ; and that "no proceeding can be begun to contest an election after the governor has issued the commission." Taking all these provisions together there is a very powerful indication of a purpose to concentrate all disputes touching the results of elections by the people, where the persons elected are to be commissioned by the governor, before him, and to make his commission final unless some negative upon its finality in the given case can be pointed out in the constitution or the laws. In regard to the office of justice of the peace, there is no such negative in the constitution, and none in any statute unless it be included in the general provision on the subject of *quo warranto* in section 3203 of the Code. That section reads thus : "The writ of *quo warranto* may issue to inquire into the right of any person to any public office, the duties of which he is in fact discharging, but must be granted at the suit of some person either claiming the office or interested therein." It is plain, however, that while this section leaves the range of inquiry the same as it was prior to the adoption of the Code as to the *right* which can be examined, it prescribes nothing expressly on the subject of what shall constitute *evidence* of the right, and this last is the point on which section 60th bears. When the court in conducting its inquiry on *quo warranto* is confronted with the governor's commission, must the court treat it as final ? To this question section 3203 gives no express answer. But to hold that in a direct proceeding to test the right of an adverse claimant to the office, over the title of the commissioned incumbent, the court must stop its inquiry on the production of the commission, would be to recognize the 60th section of the Code as working a stu-

pendous change in the prior law, for until this section was enacted the governor's commission was but *prima facie* evidence, and courts could go behind it. 7 *Ga.*, 473 ; 8 *Ib.*, 360 ; 1 Ala., 559 ; 2 *Ib.*, 31. The right to an elective office is not rooted in the commission but in the election, and to examine the right to the bottom, it is often necessary to bring the election under immediate scrutiny, and not look at the results merely as they are reflected in the commission. An office is property, and in the nature of things, the title to it, when contested, presents a question appropriate to the judiciary, and very often questions of fact arise for trial by a jury. Under a constitution which, like ours, commits executive functions to one body of magistracy and judicial functions to another, and which ordains trial by jury as the general system of dealing with issues of fact, it may be doubted whether the governor can be made, by statute, the sole and final judge of titles to public office. And yet, it is not easy to see why the commission issued by the state to an officer, might not be put by legislation on the footing of a grant issued for land, and be made the highest and best evidence of right. Very much could be said for such a power as well as against it. In view of the great uncertainty whether the 60th section, in saying commissions are final, intends to make them so in direct proceedings to try titles to office, we have not found it necessary in the present case, *under the peculiar facts*, to decide on the power of the legislature to go that far. It is obvious that the section can have some operation without construing it to extend to cases other than those where the question of title to the office arises collaterally, as in 44 *Ga.*, 501, where it was held that in a proceeding to compel a predecessor in the office to turn over books to a commissioned incumbent, the court would not look behind the commission. Attention may be called, also, to an instance of ousting a commissioned incumbent, since the adoption of the Code, found in 40 *Ga.*, 164, in which, although the point we are discussing was not made, this court treated the gover-

nor as under a duty to commission the prevailing party and referred to 8 *Ga.*, 360, *supra*, as still applicable in principle.

What we undertake to rule now in an authoritative way is only this: that even if it be the purpose of the Code to set up an exclusive remedy by contest before the governor, and if such a provision be constitutional, the remedy is applicable only where full opportunity has been afforded to have the contest heard and determined; and that where, without fault on the part of the contestant, a commission has issued inadvertently, pending the contest, and after due notice to the governor, the commission is not conclusive, and the remedy of *quo warranto* is available. A man who claims an office is entitled to a hearing somewhere, and there can be no doubt of the general jurisdiction of the courts by *quo warranto;* and if this jurisdiction is restricted in the particular case by what has transpired elsewhere, that something should at least amount to an opportunity to be heard there in the mode the law prescribes. A commission issued without a hearing, where the right to a hearing has been asserted and not accorded, is not a legal commission; and if any commission be final and conclusive in the broad sense contended for by the respondent, it is a legal commission only, and not one which has issued prematurely. When the respondent was commissioned, he was not entitled to any commission, whether in fact he was duly elected or not. The same law which provided for a commission required it to be withheld, to afford opportunity for the relator to be heard against it. There was, so to speak, a suit pending before the governor; there was to be a trial, and while preparation for trial was in progress according to the due course of law, judgment was inadvertently rendered for one of the parties, and the evidence of title was given to him. Strictly speaking, the governor had no power to issue and deliver the commission when it was issued and delivered; and to treat it as *prima facie* evidence of right to the office, is yielding it full as much consideration as it deserves.

3. What we have ruled under the first head of this opinion disposes for the present of all the points made in the petition on the competency of the managers, and the general legality of the election. But as the court below ruled specially, and we think erroneously, on the effect of relationship of one of the managers to one of the candidates, we will devote a few words to this question. It is the right of electors to vote for and elect whom they please. This is the primary consideration in all elections, and nothing which tends to restrict or limit this right ought to be held as law by analogy or implication. Any person who has the statutory qualifications may be a manager, and it is not among the prescribed qualifications that the managers shall not be related by affinity or consanguinity to those for whom the people think proper to vote. Indeed, if the voters chose to elect one of the managers to serve as their justice of the peace, we see not very clearly how it could be prevented. In Pennsylvania, in the case of Commonwealth *vs.* Whœlper, 3 Serg. & R., 29, it has been held that at a corporation election, one of the inspectors of the election might be voted for and elected. Perhaps this ruling goes to an extreme, but it was made in favor of a free vote; and there is an obvious difficulty in the way of confining voters to a more narrow range of selection than the whole number of those whom the law has rendered eligible to serve them in office. We need not, and do not now, say that one of the managers might be chosen; but from the necessity of having managers at all, coupled with the right of the people to *elect* their officers, we are confident that the relatives of the managers, whether rear or remote, may be chosen if it is the will of the electors to vote for them.

Judgment reversed.