DAVIS *et al. v.* THE CITY COUNCIL OF DAWSON.

90    817
101    256

90    817
104    183

90    817
f108    629

90    817
117    805

90    817
119    578
119    978

1. It was not necessary, under that provision of the act of September 1st, 1891, amending the charter of Dawson, which declares that all male citizens of this State residing in the city who are entitled to vote for members of the General Assembly shall be entitled to vote at elections for municipal officers, that one otherwise qualified and offering to vote should have registered with the tax receiver of Terrell county (which embraces the city of Dawson) in the manner prescribed by the act of September 29, 1887. The local act for the registration of voters in Terrell county applies only to elections for the officers designated in that act, and does not apply to municipal elections in the city of Dawson. That city having a system of registration for municipal elections, compliance with its provisions would be necessary to entitle one to vote in such elections, but it is not the purpose of the law to have two distinct and separate systems of registration operating upon the same election. The word "entitled," used in the phrase "entitled to vote for members of the General Assembly," should be construed as meaning "qualified"; and "registration adds no qualification to voters, but only serves to identify them as persons qualified to vote." It follows that the managers of the election improperly rejected the ballots of persons duly registered for the city election and otherwise qualified to vote, simply because they had not registered in accordance with the provisions of the act last mentioned.

2. Any citizen and tax-payer of an incorporated city has such an "interest" in the office of alderman as would entitle him to institute a proceeding under section 3203 of the code, against one assuming to hold that office and exercising its functions, for the purpose of inquiring into and determining his legal right thereto. A defeated candidate also has an interest in the office, and, while he may not attack the election on any ground which (if true) would make it totally illegal and void, may, though not himself claiming the office, dispute the result of the election and proceed by *quo warranto* to have it set aside and the office declared vacant, upon the ground that the managers of the election, by unlawfully rejecting the ballots of many persons entitled to vote, defeated his election, a result which would not have occurred if those ballots had been received and counted.

3. The petitioners, as citizens and tax-payers, having a remedy at law by *quo warranto* proceedings to inquire into the right of the defendants to hold the offices in question, and it also appearing from the allegations of their equitable petition that they were defeated candidates who might, as such, if they had so chosen, have used this remedy, the court below rightly denied the injunction

and other relief prayed for. The uniform procedure act of 1887 expressly excepts from its operation the remedy by *quo warranto.* February 27, 1893.

Elections. Municipal corporations. Statutes. Words and phrases. Practice. *Quo warranto.* Injunction. Before Judge GUERRY. Terrell county. At chambers, January 4, 1893.

HOYL & PARKS and J. W. WALTERS, by HARRISON & PEEPLES, for plaintiffs.

·BACON & MILLER and J. A. LAING, for defendants.

LUMPKIN, Justice. .

1. The charter of the city of Dawson, as amended by the act of September 1st, 1891 (Acts of 1890–1, Vol. II, p. 526), provides that " all male citizens of this State residing within the corporate limits of said city, who shall be entitled to vote for members of the General Assembly of this State, and who have resided within said city for at least thirty days prior " thereto, shall be entitled to vote in all elections for municipal officers held in that city. By an act approved September 29th, 1887 (Acts of 1886–7, p. 738), " providing for the registration of qualified voters in Terrell county" (in which county the city of Dawson is situated), " the tax receiver of said county, during the year 1888, and biennially thereafter, or during each year as elections are held for Governor, members of the General Assembly, members of Congress and presidential electors," was directed to keep a registration book, in which all persons otherwise qualified were required to have their names duly entered, in order to be entitled to vote at certain elections in that county. Construing the charter of the city in connection with this act, the managers at the last municipal election held in the city of Dawson were of the opinion that to have the right to vote at that election it was necessary to have previously registered with the tax receiver; and disregarding a registration list which had

been made and kept under a city ordinance passed in pursuance of the charter, they rejected the votes of all electors whose names did not appear on the county's registration book. The effect of this action on their part, it is claimed by petitioners, was to disfranchise a large number of persons otherwise qualified to vote, whose ballots, had they been received and counted, would have entirely changed the result of the election.

The issue thus presented is not a new one. In *Kaigler* v. *Roberts*, 89 *Ga.* 476, 15 S. E. Rep. 542, the proper construction to be placed upon the local registration law for Terrell county was one of the questions before this court for determination, and it was expressly ruled that the act of September 29, 1887, had no application whatever to the election upon the question of issuing bonds to build a court-house, which was then under consideration, but applied only to elections for the officers specifically designated in that act. This decision we are now prepared to affirm and sanction.

That the amended charter of Dawson requires, as one of the essential qualifications of an elector, that he "shall be entitled to vote for members of the General Assembly," presents no sufficient reason for holding that the act of 1887 applies to the case at bar. True, that act bears date prior to the act of September 1, 1891, amending the city's charter; but when the purpose for which the later act was passed is considered, it is manifest that the legislature neither contemplated, nor had the slightest reference to, the then existing local registration law for Terrell county. The only objects of the amending act were to increase the number and change the terms of aldermen, provide compensation for the city's officers, and, without regard to the question of registration, declare who should be considered as qualified to vote in elections held for municipal officers. Indeed, not the slightest allusion is made to the subject of registration,

it being the evident purpose and intention of the act that the system of registration then operative in that city under its charter should be allowed to continue in force. (Charter of the City of Dawson, Acts of 1882–3, p. 404.) It is in direct opposition to the policy of the law that two separate and distinct systems of registration should operate upon the same election; and there is no reason for holding that the legislature, in amending the charter of Dawson in the respects indicated, had any reference to the registration law governing county elections. The language employed in prescribing what should constitute the qualifications of voters being used without reference to the subject of registration, the term "entitled," as used in the phrase quoted, is synonymous with, and should be construed as meaning the same as, "qualified." As ruled in *Mayor, &c. of Madison* v. *Wade et al.*, 88 *Ga.* 699, "registration adds no qualification to voters, but only serves to identify them as persons qualified to vote," and it follows that the managers of the election improperly rejected the ballots of persons duly registered for the city election and otherwise qualified to vote, simply because they had not registered in accordance with the provisions of the act of September 29th, 1887, *supra*, applicable alone to certain elections of Federal and State officers therein specified.

2. The petition in this case was brought by W. H. Davis and Wm. H. Bishop, describing themselves as "citizens of the city of Dawson, said State, and taxpayers therein." In passing upon their right to prosecute the present action, two questions arise: (1) whether an action will lie at the instance of mere citizens and tax-payers to inquire into the title of one assuming to hold a public office and exercising its functions; and (2) if such right does exist, what is the proper remedy to pursue to eject one alleged to be unlawfully usurping such powers? At common law, the mode of testing

the title of one holding public office was by *quo warranto*, and this remedy could be invoked by any one who showed some present and substantial interest in the question to be decided. That a citizen and tax-payer has such an interest in the due administration of public affairs as will entitle him to institute proceedings to oust an incumbent unlawfully assuming to usurp the functions of one of the public offices of the city in which such tax-payer resides, is now recognized by the leading text writers on this subject. Mechem's Pub. Off. & Off'rs, §490; Paine on Elections, §873; Throop on Pub. Off. §781; 7 Lawson's Rights, Rem. & Pr. §4042. And such has been the express ruling in the following cases: Com. *v.* Com'rs of Philadelphia, 1 S. & R. 382; State *v.* Hammer, 42 N. J. L. 435; Com. *v.* Jones, 12 Pa. St. 365; Com. *v.* Meeser, 44 Pa. St. 341; Com. *v.* Keilly, 4 Phil. Rep. 329; State *v.* Martin, 46 Conn. 479; Hinckley *v.* Breen, 55 Conn. 119; State *v.* Vail, 53 Mo. 97. In the light of the foregoing authorities, little difficulty is encountered in determining what construction should be given to section 3203 of the code, which declares that: "The writ of *quo warranto* may issue to inquire into the right of any person to any public office, the duties of which he is in fact discharging; but must be granted at the suit of some person either claiming the office, *or interested therein.*" Indeed, this question has previously been settled by this court. Citing *Hardin* v. *Colquitt*, 63 *Ga.* 588, and *Collins* v. *Huff*, 63 Ga. 208, as showing the construction the court had uniformly placed upon this section, it was expressly ruled in *Churchill* v. *Walker*, 68 *Ga.* 681, that: "Every citizen of a town has an interest in its municipal offices which will support a *quo warranto* proceeding to test the right of incumbents thereto." It is true that Chief Justice Jackson, in that case, concurred *dubitante* as to this point; but after a most careful consideration of the question, we are en-

tirely satisfied with the correctness of the decision therein announced, and we refer to the reasoning of Justice SPEER, who delivered the opinion of the court, as fully demonstrating the soundness of this conclusion.

Although, as already stated, petitioners bring their action in the capacity of citizens and tax-payers, the allegations of their petition disclose the fact that each was a defeated candidate for alderman in the city election. In the argument here it was urged that, this being true, petitioners should have contested the election under the provisions of section 1333 of the code, as amended by the act of September 21, 1883; and having failed to pursue their proper remedy within the time prescribed by law, they cannot now in any manner be heard to question the right of their successful opponents to hold the offices in question. This contention was made under an evident misapprehension of the law as applied to the peculiar facts presented. It is conceded by petitioners that their opponents received a majority of the lawful votes actually *cast* at the election. They do not assert that they themselves were duly elected, but by reason of the improper conduct on the part of the managers in rejecting the ballots of a large number of electors fully qualified to vote, the election utterly failed in its purpose, and neither the present incumbents in office, nor any other of the candidates, could legally be declared elected. This position is not only entirely logical, but is in perfect accord with the facts alleged to exist. Had they chosen in their petition to proceed in the character of defeated candidates, we think they would have had the right to do so. Indeed, under the circumstances disclosed, the fact that they were defeated candidates should give them an interest independent of and even superior to that which, as citizens and tax-payers, they undoubtedly possess. They show by their allegations that if the managers of the election had not im-

properly declared a large number of their supporters disqualified, they would have received a plurality of the votes cast and would have been elected. Certainly, therefore, they have a most material and potent interest in having the offices in question declared vacant, for in the election which would necessarily follow they would have another opportunity, perhaps a very favorable one, to obtain the offices of which they have been wrongfully deprived. In the character of defeated candidates they could have claimed no more than the right to have this opportunity. They could not have properly asserted or insisted that they were elected in the election which had already occurred, but they could have challenged the right of the present incumbents, and prayed to have the offices in question declared vacant, and a new election ordered. In Renner v. Bennett, 21 Ohio St. 431, the facts of which case are very similar to those in the case at bar, a defeated candidate sought, not only to oust his opponent from office, but to have himself declared elected on the ground that, had the managers not unlawfully rejected the ballots of certain duly qualified electors, he would have received a plurality of the votes cast at the election. While the court in that case set aside the election and declared the office in question vacant, it very pertinently remarked, in passing upon the right of the "contestor" to himself claim the office : "We have no power or right, in a case like the present, to declare the contestor elected. He had not a majority of the votes *cast* at the election. The legal votes for him which were rejected, or rather their excess over like votes for the contestee rejected, although they are to be counted against the contestee in order to defeat his election, cannot be counted for the contestor in order to secure his election." And to the same effect, see : State v. McDaniel, 22 Ohio St. 354; In the Matter of the Long Island Railroad Co., 19 Wend. 37; People v.

Phillips, 1 Denio, 388. It is manifest that the petitioners in the present case could have gained nothing by contesting the election in the manner suggested by counsel, for while in a contest between claimants for an office illegal votes may properly be rejected, votes *not actually cast* at the election can in no event be counted. This proposition is too plain for argument.

Had the petitioners proceeded as defeated candidates, and in that character only, to set the election aside, they would not, of course, have been permitted to allege any facts tending to show that the election, as a whole, was illegal or void. In *Hardin* v. *Colquitt, Governor*, 63 *Ga.* 588, the relator brought his proceeding under section 3203 of the code as a defeated candidate "*claiming the office*," and attacked the election not only because of votes unlawfully cast, but upon grounds showing that the election was illegal in its inception and utterly void. Accordingly, it was held that, having shown by his petition that his only claim to office was by virtue of an election which he himself alleged was illegal and entirely without authority of law, he could not, in the capacity of claimant, successfully dispute the title of the incumbent then in office. He neither alleged himself to be " a resident of the district," nor showed " any interest in the controversy otherwise than as a claimant of the office." Had he done so, the court say his right of action would have been complete, and his alleged claim to the office might be regarded as mere surplusage. From this decision, it would also seem clear that the mere fact that the petitioners in the present case were defeated candidates, would have presented no obstacle to their proceeding, in their capacity as citizens and tax-payers, to have the election vacated on the grounds alleged. This view is well supported. "All that the court requires, in such instance, is to be satisfied that the relator is of sufficient responsibility, is acting in

good faith and not vexatiously, and has not become disqualified by his own conduct, with respect to the election that he is seeking to impeach. The authorities are numerous to this purpose." State v. Hammer, 42 N. J. L. 437. In People v. Londoner, 13 Col. 303, the fact that the relator was a defeated candidate was directly urged as a reason why he should not be allowed to pursue his remedy. In reply thereto, the court said: "The fact that he was the opposing candidate, and claims to have received a majority of the votes legally cast, does not work his disqualification. It may be that he is more interested in vindicating his alleged private rights than he is in redressing the supposed public wrong. But this fact, if it be a fact, does not justify our refusal to investigate in this case the alleged usurpation, and render such judgment as the law permits and the public welfare requires." Certainly, so far as appears from the record before us, neither of the defeated candidates in the present case is chargeable with any conduct in respect to the election in question which would estop him from complaining of its result.

3. Although we think the allegations made by petitioners present a case in which there would be merit had they adopted the appropriate remedy, none of the relief prayed in their equitable petition can be accorded them in the present action. As shown in the preceding division of this opinion, their proper remedy is by *quo warranto* proceedings under section 3203 of the code, either in the capacity of citizens and tax-payers, or as defeated candidates interested in the offices in question. Courts of equity have been loath to interfere in politics, and have invariably declined to do so where any other remedy is open to those seeking to redress supposed public wrongs of a political nature. Nor can the present petition be entertained under the uniform procedure act of 1887, providing that in the trial of civil

cases, the superior courts of this State "shall give effect to all the rights of the parties, legal or equitable, or both," that act expressly excepting from the operation of its provisions proceedings by *quo warranto*.

It follows that the court below properly denied the injunction and other relief prayed for.

*Judgment affirmed.*