PEOPLE, PLAINTIFF AND APPELLEE, *v.* BETANCOURT, DEFENDANT AND APPELLANT.

APPEAL from the District Court of Aguadilla in *Quo Warranto* Proceedings.

No. 2155.—Decided July 30, 1920.

QUO WARRANTO.—In Porto Rico proceedings in the nature of *quo warranto* can be instituted only by the Attorney General or by a district attorney, acting on his own initiative or at the instance of a person who has an interest in the question to be considered greater than the interest of a mere citizen as distinguished from a citizen and tax-payer.

The facts are stated in the opinion.

*Messrs. M. A. García* and *J. B. Huyke* for the appellant.

*Messrs. B. Esteves* and *M. Guerra* for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

The Attorney General, at the instance of José C. Rivera, as relator, instituted this proceeding to oust defendant from his office as a member of the municipal council of San Sebastian. At the threshold of the trial defendant, in a motion accompanied by documentary evidence in support of the proposition that Rivera not being nor ever having been a taxpayer had no adequate interest in the question involved, challenged the right of relator to proceed.

This motion was overruled by the district court on the theory that any resident of San Sebastián of age might be a relator, the matter being one of public interest, and defendant took an exception.

Of the seven errors assigned we shall consider only the second, which goes to the question so raised below.

Section 2 of an Act establishing *quo warranto* proceedings, approved March 1, 1902, provides:

"'In case any person should usurp or unlawfully hold or execute any public office * * * the attorney general or any *fiscal* of the respective district courts, either of his own accord or at the instance of any individual relator, may present a petition to the district court of competent jurisdiction for leave to file an information in the nature of *quo warranto* in the name of The People of Porto Rico and if such court shall be satisfied that there is probable ground for the proceeding the court may grant the petition and order the information to be filed and process to issue."

Discussing the question of private persons as parties in proceedings of this kind, in 32 Cyc. 1442, after a reference to the statute of 9 Anne, chap. 20, it is said:

"Similarly the statutes in many of the states permit proceedings in the nature of *quo warranto* to be brought at the suggestion of persons whose private interests are involved. In these cases the attorney-general or other public officer must nominally bring the proceedings; but if he refuses to do so, or to permit his name to be used, the person interested may proceed independently on his own relation. Whether the statute expressly so provides or not, it is essential that a private person who applies for a *quo warranto* shall show his interest in the subject-matter of the prosecution, and whether such an interest exists is a question for the court to decide upon the application for the writ. In a proceeding against a person acting as mayor, it has been held a sufficient interest that the relator is a freeholder, resident, and elector of a city, or that the relator is merely a citizen."

In support of the proposition that mere citizenship constitutes sufficient interest, but two cases are cited, to wit:

*State* v. *Kohnke,* 109 La. 838, and *Crovat* v. *Mason,* 101 Ga. 246.

In the Louisiana case the court says:

"The only interest the relator alleges is the interest which he has in common with all the other resident taxpayers of the city of New Orleans whose property has been assessed for the sewerage and water tax, of the proceeds of which the said board has the administration. He stands upon his rights as a resident and as a taxpayer, and also upon a contract right that has accrued to him, he claims, as a result of the proceedings that culminated in the imposition of the said sewerage and water tax."

The court in its opinion was combating the doctrine of *State* v. *Mason,* 14 La. Annual, 505, and *Voisin* v. *Leche,* 23 La. Annual, 25, in which the same court had held that "no one but a person pretending to have a right to an office should be permitted to contest the right of the incumbent of that office." It follows that what was said as to the interest of "any citizen of the municipality" as distinguished from a citizen and taxpayer may be regarded as *obiter dicta,* although the opinion cites and discusses about all of the authorities that can be found in support of the extreme view adopted, *arguendo,* by the court. That one member of the court, Breaux, J., concurred in the decree only is likewise significant.

In the Georgia case it appears from the official report that Crovat presented his petition, praying for leave to file the same as an information in the nature of a writ of *quo warranto,* claiming that in law he was the duly elected mayor of the city of Brunswick and that Mason was illegally holding the office. Upon the hearing the prayer was denied and Crovat excepted.

In the opinion the court says:

"An application for leave to file an information in the nature of a writ of *quo warranto* to inquire into the right of a person exercising the duties of the office of mayor of a city will be granted

at the suit of some person either claiming the office or interested therein. Civil Code, § 4878. When the application is based on the claim of the relator to the office, it must be shown that such claim is *bona fide* made; and if the facts are set forth upon which the relator bases his claim, so that the question presented is one of law, the court will, in the exercise of its judgment, pass upon the legal effect of the claim as made, and grant or refuse the leave to file an information * * *. In the case of *Davis* v. *City Council*, 90 Ga. 817; 17 S. E. 110, this court held, in terms, that a defeated candidate has such an interest in the office, though not claiming it, that he might dispute the result of the election, and proceed to have the election set aside and the office declared vacant * * *. But the relator also alleges in his application that 'he is a citizen of the state of Georgia, and of the county of Glynn, and of the city of Brunswick, therein, and that as such citizen he has an interest in, and is entitled to, all the privileges of a citizen in the election of officers for said city, and in the office of mayor of said city.' The interest which one who is a citizen and taxpayer has in the due administration of public affairs will entitle him to maintain the proceeding. *Churchill* v. *Walker*, 68 Ga. 681; *Com.* v. *Meeser*, 44 Pa. St. 341; *State* v. *Martin*, 46 Conn. 479; *State* v. *Vail*, 53 Mo. 97; *Richards* v. *Hammer*, 42 N. J. Law, 53.''

In 22 R. C. L. page 692, § 25, we find the following:

''In interpreting the several statutes there is manifest a tendency on the part of the courts to restrict the use of the writ to persons having an interest in the office involved in the proceedings. This is true even under the broad terms of the statute of Anne, and, with few exceptions, is true of the judicial interpretations of the varying American statutes. Considerable difference, however, is manifested in determining the degree of interest necessary to maintain the proceedings, due not only to a difference in the phraseology of the statutes but likewise to a difference in judicial attitude. When the title to a public office is concerned, there are many cases which support the rule that any citizen and taxpayer has such an interest in the due administration of public affairs as will entitle him to maintain *quo warranto* to oust an incumbent unlawfully assuming that *quo warranto* cannot be maintained on the relation of a citizen and taxpayer who has no interest in the public office involved different from other citizens and taxpayers. An illuminating discussion

of this subject is found in a decision of the United States Supreme Court, construing a statute which provides for the institution of proceedings in *quo warranto* for usurpation, first by the attorney-general or the district attorney on his own motion, or at the relation of a third person, by leave of court, and second that upon refusal of the attorney-general and district attorney after request by a person interested, such person might apply to the court for leave to proceed. The conclusion reached by the court was that the interest which will justify such a proceeding by a private individual must be more than that of a taxpayer. It must be an interest in the office itself, and peculiar to the applicant.''

In Ann. Cas. 1913 C. 909, note to *Slavin* v. *McGuire,* it is said:

''A private citizen and taxpayer is undoubtedly interested in the duties required of public officials authorized to levy taxes or to expend the proceeds of taxation, and has a standing to maintain *quo warranto* proceedings in a matter of public interest in which he has a special interest by reason of being a contributor to the public funds.''

And the note to *Meehan* v. *Bachelder,* 6 Ann. Cas. 463, says:

''The statute of 9 Anne permitted an information in the nature of *quo warranto* to be brought, with leave of the court, at the relation of any person desiring to prosecute the same against any person usurping, intruding into, or unlawfully holding any franchise or office in any city, borough, or town corporate. 3 Bl. Com. 264; *State* v. *Ashley,* 1 Ark. 279; *State* v. *Stewart,* 6 Houst. (Del.) 373; *State* v. *Utter,* 14 N. J. L. 87; *State* v. *Elliott,* 13 Utah, 200, 44 Pac. Rep. 248. It has been said that the operation of this statute is 'confined to cases in which the public at large is not interested.' *Com.* v. *Lexington, etc., Turnpike Road Co.,* 6 B. Mon. (Ky.) 397. And under state statutes permitting the filing of an information in the nature of *quo warranto* by a private person to try title to a public office, the general rule is that an individual cannot maintain the proceeding unless he has an interest in the office alleged to be unlawfully occupied.

  *        *        *        *        *        *        *

''By the statute of Anne, it will be noticed the offices in respect

to which an information was permitted to be filed by a private person were the offices of municipal corporations. The statutes of the United States which give to private individuals the right to file the writ usually limit the right to persons who have or claim an interest in the office unlawfully occupied, and under these statutes as well as the statute of Anne, it is generally held that a citizen and taxpayer of a municipal corporation has such an interest in a municipal office as will authorize him to file the writ to try the title of an incumbent thereof.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

"On the other hand it has been denied that a mere citizen and taxpayer has such an interest in even a municipal office as will authorize him to maintain *quo warranto* proceedings to oust an unlawful incumbent."

See also note to *State* v. *Taylor,* 13 Ann. Cas. 1063.

In a note to *State* v. *Noble,* 125 Am. St. Rep. 637, the editor, without discussing the grounds underlying the general trend of judicial opinion, seems inclined to think that citizenship alone should suffice.

"While it so happened in the cases referred to that the moving party was both a citizen and a taxpayer, we see no reason why he should be both. The interest in governmental affairs is by no means restricted to either citizens or taxpayers. Doubtless, the failure to pay taxes does not deprive a citizen of his right to redress in the courts. Nor are taxpayers usually denied redress because they are not citizens. We assume, though we know of no case so deciding, that the right of the applicant may, in many cases, be complete, if he is a citizen, though not a taxpayer, and perhaps in some cases, if he is a taxpayer, though not a citizen. But the rule supported by the foregoing cases is by no means of universal application. There are many cases which hold that *quo warranto* against the usurper of a public office cannot be maintained on the relation of a citizen and taxpayer who has no interest different from other members of the general public: *State* v. *Reardon,* 161 Ind 249, 68 N. E. 169; *Hudson* v. *Conklin,* 77 Kan. 764, 93 Pac. 585; *King* v. *Kahne,* 27 Ky. Law Rep. 1080, 87 S. W. 807; *Barnum* v. *Gilman,* 27 Minn. 466, 28 Am. Rep. 104, 8 N. W. 375; *State* v. *Stein,* 13 Neb. 529, 14 N. W. 481; *State* v. *Taylor,* 50 Ohio St. 120, 38 N. E. 24; *Commonwealth* v. *Cluley,* 56 Pa. 270, 94 Am. Dec. 75, *Ney*

v. *Whitely,* 26 R. I. 464, 59 Atl. 400; *Mills* v. *State,* 2 Wash. 566, 27 Pac. 560; *State* v. *Mathews,* 44 W. Va. 372, 29 S. E. 994. These cases all insist that the modern statutes which confer upon 'any person or persons' the right to maintain an action in *quo warranto* mean only those persons who have some special interest, or personal grievance affected. Perhaps the want of uniformity in the statutes of the several states regulating *quo warranto* proceedings may account, in part, for the apparently irreconcilable conflict of judicial opinion as to the right of a citizen and taxpayer, who has no greater interest than other members of the general public, to maintain *quo warranto* to oust the incumbent of a public office, who illegally holds the same; but the opposing opinions seem mainly based on the bent of the different judicial minds.''

The language of the Supreme Court of Idaho in *Toncray* v. *Budge,* 14 Idaho, 621, is often quoted as a sound statement of the reason for the strict interpretation usually placed by the courts upon statutes of the kind now under consideration. In that case the court said:

''To allow any and every citizen to commence an action against any public official to oust him from office at any time he may see fit, whether for private and personal revenge or the public weal, would be most disastrous, dangerous and prejudicial to the public service. In some communities and under certain conditions, they might keep a public officer engaged most of the time defending his right to the office instead of discharging the public business. This remedy was created for the benefit and protection of the public in its governmental and sovereign capacity, and for the benefit of the community at large, rather than for the gratification, satisfaction or protection of any particular individual other than one himself entitled to the office.''

For the purposes of this opinion it may be conceded that a taxpayer and a citizen has the necessary interest. In so far as the right of a mere citizen as distinguished from a taxpaying citizen is concerned, the reasoning of the Supreme Court of the United States in *Newman* v. *Frizzell,* 237 U. S. 537, would suffice to turn the scale, were there any doubt as to how the question should be decided, in this jurisdiction.

Although the opinion in that case construes a statute which is said to distinguish between "an interested person" and a "third person" referred to in the said law, the decision is based on broader grounds as indicated by the following extract:

"5. In a sense—in a very important sense—every citizen and every taxpayer is interested in the enforcement of law, in the administration of law, and in having only qualified officers execute the law. But that general interest is not a private but a public interest. Being such, it is to be represented by the Attorney General or the District Attorney who are expected by themselves or those they authorize to institute *quo warranto* proceedings against usurpers in the same way that they are expected to institute proceedings against any other violator of the law. That general public interest is not sufficient to authorize a private citizen to institute such proceedings; for if it was, then every citizen and every taxpayer would have the same interest and the same right to institute such proceedings and a public officer might, from the beginning to the end of his term, be harassed with proceedings to try his title.

"6. As pointed out in the carefully prepared opinion of the majority of the Court of Appeals of the District, there is such conflict as to the meaning of the phrase 'interested person' in this class of cases. At first reading the conflict seems irreconcilable. But upon examination it will appear that the difference is often due to a difference in the public policy and statutes of the respective States. In some the writ issues only at the request of the Government's law officers; in others at the instance of a person claiming the office; in others at the request of a person claiming the office or interested therein; in others at the instance of a person interested; in others at the request of any person who can secure the consent of the court; and in five or six others the legislature has thrown open the door and permitted *any person* who desires to do so to use the writ. This is true of the Acts underlying some of the decisions relied on by the Relator Frizzell.

"For example, the English cases are based on the statute of 9th Anne, ch. 20, which, in terms, related to suits against those 'who unlawfully exercise an office within cities, towns and boroughs. It expressly authorized the courts to permit informations in the nature of *quo warranto* at the relation of any person * * *

*desiring to sue or prosecute the same.'* Some of the other decisions cited are from States where the statute provides that the proceedings might be instituted at the relation of 'any person desiring to present the same'; 'upon the complaint of any private party'; 'upon the relation of any person desiring to sue or prosecute the same.' But there are so many and such weighty reasons against permitting private persons to raise questions as to the incumbent's title to a public office that, even in those States which permit 'any person' to institute *quo warranto,* the courts have always required the relator to show that he was a citizen and taxpayer."

The judgment appealed from must be

*Reversed.*

Chief Justice Hernández and Justices Wolf, del Toro and Aldrey concurred.