El Pueblo, Demandante y Apelado, *v.* Betancourt, Demandado y Apelante.

Apelación procedente de la Corte de Distrito de Aguadilla en un procedimiento sobre *quo warranto.*

No. 2155.—Resuelto en julio 30, 1920.

Quo Warranto—Parte Demandante en el Procedimiento.—El procedimiento del *quo warranto* solamente puede ser instado en Puerto Rico por el Fiscal General o por un fiscal de distrito, ya obrando por propia iniciativa o a petición de alguien que tiene algún interés en la cuestión que se ventila además del que pueda tener un mero ciudadano a diferencia de un ciudadano y contribuyente.

Los hechos están expresados en la opinión.
Abogados del apelante: Sres. *M. A. García* y *J. B. Huyke.*
Abogados del apelado: Sres. *B. Esteves* y *M. Guerra.*

El Juez Asociado Sr. Hutchison, emitió la opinión del tribunal.

El Fiscal General a petición de José C. Rivera, quere-

llante, instituyó este procedimiento para que el demandado fuera destituído de su cargo de miembro del Concejo Municipal de San Sebastián. Al comenzar el juicio el demandado mediante moción a la cual acompañó de prueba documental para sostener la proposición de que no siendo ni habiendo sido jamás Rivera contribuyente no tenía verdadero interés en la acción envuelta, impugnó el derecho del querellante a seguir adelante con este procedimiento.

Esta moción fué declarada sin lugar por la corte de distrito basándose en la teoría de que "cualquier residente de San Sebastián, mayor de edad, podía actuar como querellante por ser la cuestión de interés público," y el demandado tomó excepción.

De los siete errores que han sido alegados solamente consideraremos el segundo el cual se refiere a la cuestión que fué de tal modo promovida en la corte inferior.

La sección 2 de una ley estableciendo los procedimientos del *quo warranto*, aprobada en 1°. de marzo de 1902, prescribe que:

"Cuando alguna persona usurpare o ilegalmente ejerciere o desempeñare funciones de algún cargo público * * * el Fiscal General o cualquier fiscal de las respectivas cortes de distrito, ya obrando por su propia iniciativa, ya a instancia de otra persona, podrá presentar a la corte de distrito que tenga jurisdicción en el asunto, una petición de que se le admita una solicitud de que se abra una información de la naturaleza del *quo warranto*, a nombre de El Pueblo de Puerto Rico, y si a juicio de dicha corte resultare que existe probable fundamento para instruir las diligencias del caso podrá ella acceder a la petición y ordenar que se admita la información y se expida el nombramiento."

En el tomo 32 de Cyc., página 1442, al discutirse la cuestión de personas particulares como partes en procedimientos de esta naturaleza, después de hacerse referencia al estatuto 9 Ann. Capt. 20, se dice lo siguiente:

"Asimismo los estatutos en muchos de los Estados permiten que se establezcan procedimientos de la naturaleza del *quo warranto* a

moción de personas cuyos intereses privados están envueltos. En estos casos el Fiscal General u otro funcionario público debe establecer a su nombre los procedimientos; pero si se negare a hacerlo o a permitir que se use su nombre, la persona interesada puede proceder independientemente por su propia cuenta. Ya que el estatuto lo prescriba o no expresamente es esencial que una persona particular que solicita un *quo warranto* deberá demostrar el interés que tiene en la materia objeto del procedimiento, y si existe tal interés o no es cuestión que la corte habrá de resolver al hacerse la solicitud interesando la expedición del auto. En un procedimiento contra una persona que actuaba como alcalde se resolvió, que constituía interés suficiente el hecho de ser el promovente propietario, residente, y elector de una ciudad o que dicho promovente era meramente un ciudadano."

Para sostener la proposición de que la mera ciudadanía constituye interés suficiente solamente se han citado dos casos, a saber: el de *State* v. *Kohnke*, 109 La. 838, y *Crovat* v. *Mason*, 101 Ga. 246.

En el caso de Louisiana el tribunal dijo lo siguiente:

"El único interés que alega el promovente es el interés que tiene en unión de todos los demás residentes contribuyentes de la ciudad de New Orleans cuya propiedad ha sido tasada a los efectos de la contribución de alcantarillado y acueducto, de cuyos dineros dicha junta tiene la administración. Se funda él en los derechos que tiene como residente y contribuyente y también en el derecho que tiene por virtud de un contrato que reclama como resultado de los procedimientos que dieron por resultado la imposición de dicha contribución por alcantarillado y acueducto."

La corte en su opinión combatía la doctrina del caso *State* v. *Mason*, 14 La. Annual 505, y *Voisin* v. *Leche*, 23 La. Annual 25, en los que la misma corte había resuelto que "nadie sino la persona que pretendía tener derecho a un cargo debía permitírsele impugnar el derecho de la persona que desempeñaba ese cargo." Se deduce pues, que lo que se dijo en cuanto al interés de "cualquier ciudadano de la municipalidad" a diferencia de un ciudadano y contribuyente puede considerarse como una cuestión incidental (*dictum*) aunque

la opinión cita y discute casi todas las "autoridades" que pueden encontrarse en apoyo del extremado criterio que ha sido adoptado *arguendo* por la corte. Que ese miembro en particular del tribunal, Breaux, J., estuvo conforme con la sentencia solamente es asimismo significativo.

En el caso de Georgia consta del informe oficial que Crovatt presentó su petición solicitando permiso para radicarla como una información de la naturaleza del *quo warranto* alegando que de acuerdo con la ley él era el alcalde de la ciudad de Brunswick, debidamente elegido y que Mason se encontraba en posesión del cargo ilegalmente. Oída la petición fué denegada la súplica, y Crovatt tomó excepción.

En la opinión la corte dice lo siguiente:

"Una solicitud interesando permiso para radicar una información de la naturaleza del auto del *quo warranto* para que se investigue sobre el derecho que tiene una persona que desempeña los deberes del cargo de alcalde de una ciudad será concedida a instancia de alguna persona que reclame dicho cargo o que esté interesada en él. Código Civil, Sección 4878. Cuando la solicitud se funda en el derecho que tiene el promovente al cargo, deberá demostrarse que tal derecho se alega *bona fide* y si se alegan los hechos sobre los cuales el peticionario basa su reclamación, de modo que la cuestión que se presenta es de derecho, la corte en el ejercicio de su criterio considerará el efecto legal de la reclamación como se ha hecho y concederá o denegará el permiso para presentar la información. * * * En el caso de *Devis* v. *City Council*, 90 Ga. 817, 17 S. E. 110, este Tribunal resolvió en resumen que un candidato derrotado tiene tal interés en el cargo, aunque no lo alegue, que podría disputar el resultado de la elección y proceder a anular la elección y a que se declare vacante el cargo. * * * Pero el promovente alega también en su solicitud que es un ciudadano del estado de Georgia, del condado de Glynn y de la ciudad de Brunkswick en dicha solicitud y que como tal ciudadano tiene interés y derecho a todos los privilegios que tiene un ciudadano en la elección de los funcionarios para dicha ciudad y en el cargo de alcalde de la referida ciudad." El interés que tiene una persona que es un ciudadano y contribuyente en la debida administración de los asuntos públicos le dan derecho a sostener el procedimiento. *Churchill* v.

*Walker,* 68 Ga. 681; *Com.* v. *Meeser,* 44 Pa. St. 341; *State* v. *Martín,* 46 Conn. 479; *State* v. *Vail,* 53 Mo. 97; *Richards* v. *Hammer,* 42 N. J. Law 53.

En el tomo 22 R. C. L., pág. 692, § 25, encontramos la siguiente cita:

"En la interpretación de los varios estatutos existe en ellos la tendencia manifiesta por parte de las cortes a restringir el uso del auto a personas que tienen interés en el cargo que se discute en los procedimientos. Esto es así aunque bajo los amplios términos del estatuto de Ann. y con pocas excepciones es también cierto respecto a las interpretaciones judiciales de los diferentes estatutos americanos.. Sin embargo gran diferencia se nota al determinar el grado de interés que es necesario para sostener los procedimientos, debido no solamente a una diferencia en. la fraseología de los estatutos, sino también a una diferencia en la actitud judicial. Cuando se trata del derecho a un cargo público hay muchos casos que sostienen la regla de que cualquier ciudadano y contribuyente tiene tal interés en la debida administración de los asuntos públicos que le dan derecho a sostener procedimientos de *quo warranto* para hacer destituir del cargo a una persona que ilegalmente usurpare las funciones de dicho cargo. Hay, sin embargo, muchos casos en que se sostiene que el *quo warranto* no puede ser sostenido a instancia de un ciudadano y contribuyente que no tiene interés en el cargo público en cuestión distinta al que tienen otros ciudadanos' y contribuyentes. Una discusión luminosa sobre esta materia puede encontrarse en las decisiones de la Corte Suprema de los Estados Unidos al interpretar un estatuto que disponía el establecimiento de procedimientos de *quo warranto* por usurpación, primero, por el attorney general o el fiscal del distrito a moción propia, o a solicitud de una tercera persona, con permiso de la corte, y segundo, que al negarse el fiscal general y el de distrito después de ser requerido por una persona interesada, tal persona podría acudir a la corte en solicitud de permiso para proceder. La conclusión a que llegó la corte fué que el interés que ha de justificar tal procedimiento por parte de una persona particular debe ser mayor que el de ser un contribuyente. Debe ser un interés en el cargo mismo y peculiar al promovente."

En Ann. Cas. 1913 C. 909 nota al caso *Slavin* v. *McGuire,* se dijo lo siguiente:

"Un ciudadano particular y contribuyente indudablemente está interesado en los deberes que se requieren de los funcionarios públicos autorizados para fijar contribuciones o emplear el producto de la tasación y tiene derecho a sostener procedimientos de *quo warranto* en un asunto de interés público en el cual tiene él un interés especial por ser contribuyente de los fondos públicos."

Y en la nota al caso de *Mechan* v. *Bachelder*, 6 Ann. Cas. 463, se dice lo siguiente:

"El estatuto 9 Ann. permitía que fuera establecida una información de la naturaleza del *quo warranto* con permiso de la corte a instancia de cualquier persona que desee establecer dicho procedimiento contra cualquier persona que usurpaba o se inmiscuía o ilegalmente tenía cualquier franquicia o cargo en una ciudad, suburbio o pueblo. 3 Bl. Com. 264. *State* v. *Ashley*, 1, Ark. 279; *State* v. *Stewart*, 6 Houst. (Del.) 373; *State* v. *Utter*, 14 N. J. L. 87; *State* v. *Elliott*, 13 Utah 200, 44 Pac. Rep. 248. Se ha dicho que la aplicación de este estatuto está limitada a casos en los cuales el público en general no está interesado. *Com.* v. *Lexington, etc., Turnpike Road Co.*, 6 B. Mon. (Ky.) 397. Y bajo los estatutos de estados que permiten la radicación de una información de la naturaleza del *quo warranto* por una persona particular para probar su derecho a un cargo público, la regla general es que un individuo no puede sostener el procedimiento a menos que tenga un interés en el cargo que se alega está ocupado ilegalmente. * * *

"De acuerdo con el estatuto de Anne se verá que los cargos respecto a los cuales se permitía presentar una información por una persona particular eran los cargos de corporaciones municipales. Los estatutos de los Estados Unidos que confieren a individuos particulares el derecho a presentar la solicitud, generalmente limitan el derecho a personas que tienen o alegan tener un interés en el cargo ocupado ilegalmente y bajo estos estatutos así como bajo el estatuto de Anne, se ha resuelto generalmente que un ciudadano y contribuyente de una corporación municipal tiene tal interés en un cargo municipal que lo autoriza a presentar la solicitud para averiguar el derecho que tiene el que lo desempeña. * * *

"Por otra parte se ha negado que un mero ciudadano y contribuyente tenga tal interés en un cargo municipal que lo autorice a establecer procedimientos de *quo warranto* para destituir a la persona que desempeña dicho cargo ilegalmente." Véase también la nota al caso de *State* v. *Taylor*, 13 Ann. Cas. 1063.

En la nota al caso de *State* v. *Nokle,* 125 Am. St. Rep.
637, el editor sin discutir los motivos que sirven de base a
la corriente general de las opiniones de los tribunales, se
inclina al parecer a opinar que la ciudadanía sóla sería su-
ficiente:

"Aunque así ocurrió en los casos citados que el promovente era
ciudadano y contribuyente, no vemos razón por la cual deba ser
ambas cosas. El interés en los asuntos gubernamentales no está res-
tringido en manera alguna a los ciudadanos o contribuyentes. Sin
duda, el dejar de pagar contribuciones no priva a un ciudadano de
su derecho a ser protegido por las cortes. Ni por lo general se niega
a los contribuyentes dicha protección porque no sean ciudadanos.
Asumimos, aunque no sabemos de ningún caso en que así se re-
suelva, que el derecho del solicitante puede completarse, en muchos
casos, si es un ciudadano aunque no un contribuyente y quizás en
algun caso si es contribuyente aunque no un ciudadano. Pero la
regla que está sostenida por los anteriores casos en manera alguna
es de aplicación general. Hay muchos casos en los que se sostiene
que el *quo warranto* contra el usurpador de un cargo público no
puede ser sostenido a instancia de ciudadano y contribuyente que
no tiene un interés distinto del que tienen las demás personas del
público en general; *State* v. *Reardon,* 161 Ind. 249, 68 R. I. 169;
*Hudson* v. *Conclin,* 77 Kan. 764, 93 Pac. 585; *King* v. *Kohne,* 27
Ky. Law Rep. 1080, 87 S. W. 807; *Barnum* v. *Gilman,* 27 Minn.
466, 28 Am. R. 104, 8 N. W. 375, *State* v. *Slein,* 13 Neb. 529,
14 N. W. 481; *State* v. *Taylor,* 50 Ohio St. 120, 38 N. E. 24; *Com-
monwealth* v. *Cluley,* 56 Pa. 270, 94 Am. Dec. 75; *Ney* v. *Whitely,*
26 R. I. 464, 59 Atl. 400; *Mills* v. *State,* 2 Wash. 566, 27 Pac. 560,
*State* v. *Mathers,* 44 W. Va. 372, 29 S. E. 994. En todos estos ca-
sos se insiste en que los modernos estatutos que confieren a "cual-
quier persona o personas el derecho a sostener una acción de *quo
warranto* se refieren únicamente a aquellas personas que tengan algún
interés especial o que hayan recibido algún perjuicio personal. Tal
vez la falta de uniformidad en los estatutos de los diferentes Estados
que regulan los procedimientos de *quo warranto* pueda explicar en
parte el conflicto irreconciliable que al parecer hay en las opiniones
de las cortes en cuanto al derecho que tiene un ciudadano y contri-
buyente que no tiene más interés que el que tienen las demás per-

sonas del público a sostener un *quo warranto* para desposeer al que desempeña un cargo público ilegalmente; pero las opiniones contrarias se basan al parecer principalmente en la flexibilidad de el criterio de las diferentes cortes."

El lenguaje empleado por la Corte Suprema de Idaho en el caso de *Toncray* v. *Budge,* 14 Idaho, 621, a menudo se cita como una exposición correcta de la razón que hay para la interpretación estricta que generalmente han dado las cortes a los estatutos como el que ahora consideramos. En ese caso el tribunal dijo lo siguiente:

"Permitir a cualquiera o a todo ciudadano que inicie una acción contra cualquier funcionario público para privarle de un cargo en cualquier momento que lo crea conveniente ya sea por venganza particular y personal o en bien del público sería sumamente desastroso, peligroso y perjudicial al servicio público. En algunas comunidades y bajo ciertas condiciones daría por resultado que un funcionario público estaría ocupado la mayor parte de su tiempo defendiendo su derecho al cargo en vez de estar atendiendo las funciones del mismo. Este remedio fué establecido para beneficio y protección del público en su capacidad gubernamental y soberana y para beneficio de la comunidad en general más bien que para complacer, satisfacer o proteger a algún individuo en particular que no sea aquel que tiene derecho al cargo."

Para los fines de esta opinión puede admitirse que un contribuyente y ciudadano tiene el interés necesario. En tanto se trate del derecho que tiene un mero ciudadano a diferencia de un contribuyente, el razonamiento de la Corte Suprema de los Estados Unidos en el caso de *Newman* v. *Frizzell,* 237 U. S. 537, bastaría para cambiar la balanza en esta jurisdicción si hubiese alguna duda respecto a la forma en que ha de ser resuelta la cuestión.

Aunque la opinión en ese caso interpreta un estatuto que se dice que establece una distinción entre "una persona interesada," y una tercera persona a que se hace referencia en

dicha ley, la decisión se basa en fundamentos más amplios
como se indica en la siguiente cita:

"Núm. 5. En un sentido, en un sentido muy importante, todo
ciudadano, y contribuyente tiene interés en la aplicación de la ley,
en la administración de la ley y en que solamente los debidos fun-
cionarios cumplan con la ley. Pero ese interés general no es un
interés privado sino público. Siendo así ha de estar representado
por el Fiscal General o el fiscal del distrito, de quienes se espera
que por sí o aquellos a quienes representan que instituyan procedi-
mientos de *quo warranto* contra los usurpadores en la misma forma
que se espera que instituyan procedimientos contra cualquier otro
infractor de la ley. Ese interés público general no es suficiente
para autorizar a un ciudadano particular a iniciar tales procedi-
mientos, pues si lo fuera entonces todo ciudadano y todo contribu-
yente tendría el mismo interés y el mismo derecho a instituir tales
procedimientos y un funcionario público estaría desde el principio
hasta el fin de su término perseguido con procedimientos para pro-
bar su derecho al cargo."

"Núm. 6. Como se ha indicado en la opinión cuidadosamente emi-
tida por la mayoría de la Corte de Apelaciones del distrito, hay
gran conflicto en cuanto a la significación de la frase 'persona inte-
resada,' en esta clase de casos. A primera vista el conflicto parece
irreconciliable, pero al examinarse se verá que la diferencia a me-
nudo se debe a una diferencia en la política pública y a los esta-
tutos de los respectivos estados. En algunos el auto se expide sola-
mente a instancia de los funcionarios jurídicos del gobierno; en otros
a instancia de una persona que reclama el cargo; en otros a peti-
ción de una persona que reclama el cargo o que esté interesada en
él; en otros a solicitud de una persona interesada. En otros a pe-
tición de cualquier persona que pueda adquirir el consentimiento
de la corte; y en cinco o seis otros la legislatura ha abierto las puer-
tas y permitido a cualquier persona que desee hacerlo utilizar el
auto. Esto es verdad en cuanto a las leyes que sirven de funda-
mento a algunas de las decisiones citadas por el promovente Frizzell.

"Por ejemplo, los casos ingleses se basan en el estatuto noveno
Ann., capítulo 20, el cual por sus términos se refería a las acciones
contra aquellos, que ilegalmente desempeñan un cargo en las ciu-
dades, pueblos y suburbios. Autorizaba expresamente a las cortes
permitir informaciones de la naturaleza del *quo warranto* a instan-

cia de cualquier persona  *  *  *  que desease establecer o seguir adelante dicho procedimiento.    Algunas de las decisiones citadas proceden de estados en los cuales el estatuto prescribe que los procedimientos pueden iniciarse a instancia de 'cualquier persona que desee presentarlos;' 'a virtud de querella de cualquier persona particular;' 'mediante instancia de cualquier persona que desee establecer o seguir adelante los procedimientos.'    Pero son tantas y tan fundadas las razones en contra de que se permita a personas particulares promover cuestiones en cuanto al derecho de la persona que desempeña el cargo público que aún en aquellos estados que permiten, 'a cualquier persona, instituir procedimientos de *quo warranto,* las cortes siempre han exigido al promovente que pruebe que era un ciudadano y contribuyente.' "

La sentencia apelada debe ser revocada.

> *Declarada sin lugar la demanda y revocada la sentencia apelada, condenando al demandante al pago de las costas y honorarios de abogado, que se fijaron en $100.*

·Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, del Toro y Aldrey.