EL PUEBLO, EX REL. ROGELIO PÉREZ, QUERELLANTE Y APELADO,
*v.* MANESCAU, QUERELLADO Y APELANTE.

No. 3454.—*Visto:* Octubre 20, 1924. *Resuelto:* Octubre 29, 1924.

*Quo Warranto*—QUIÉN PUEDE INICIAR EL PROCEDIMIENTO.—El Fiscal General o cualquier fiscal de la respectiva corte de distrito, ya obrando por su propia iniciativa, ya a instancia de otra persona que sea mayor de edad, ciudadano de los Estados Unidos o de Puerto Rico, residente y contribuyente, podrá presentar a la corte de distrito que tenga jurisdicción en el asunto, una petición de que se le admita una solicitud para que se abra una información de la naturaleza del *quo warranto.*

ID.—JURISDICCIÓN.—Cuando un funcionario público ha cometido o permitido alguna acción que de acuerdo con las disposiciones de la ley envuelva la pérdida de su cargo, procede el *quo warranto* pudiendo la corte investigar originalmente los hechos sin que tenga que esperar que se dicte sentencia declarando culpable al funcionario de la infracción cometida o permitida. En tal caso debe exigirse la prueba robusta que se necesita para una sentencia condenatoria en un proceso criminal.

ID.—PUESTOS PÚBLICOS—CONDUCTA DE LOS FUNCIONARIOS PÚBLICOS.—La verdadera esencia de un gobierno libre consiste en considerar los puestos públicos como un *fideicomiso,* encomendado para el bien del país y no para beneficio de determinado individuo o partido.

SENTENCIA de *R. Díaz Cintrón,* J. (Ponce) declarando con lugar petición de *"quo warranto",* con costas. *Confirmada.*

*Martínez Nadal* y *Tormes & Colón,* abogados del apelante; *M. A. Muñoz, C. Llauger, J. A. Fernández, J. Tous Soto* y *J. R. Gelpí,* abogados del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Se trata de un procedimiento de *quo warranto.* Se inició de acuerdo con la ley a instancias de Rogelio Pérez Haro, mayor de edad, ciudadano de los Estados Unidos, elector, contribuyente y residente del municipio de Ponce. *El Pueblo* v. *Betancourt,* 28 D.P.R. 854.

Su objeto fué obtener la declaración de la corte en el sentido de que Miguel Manescau, miembro de la Asamblea

Municipal de Ponce, desempeñaba su puesto ilegalmente y debía por tanto ser separado del mismo. La causa de la ilegalidad consistía en haber Manescau arrendado una casa de su propiedad al municipio de cuya asamblea era miembro, traspasando dicha propiedad simuladamente a otra persona, a los efectos de poder realizar la transacción.

El querellado suscitó varias cuestiones previas y contestó negando que hubiera celebrado el contrato que se le atribuía. Practicóse prueba y finalmente la corte dictó sentencia declarando que el querellado ocupaba su cargo ilegalmente a virtud de los hechos alegados y probados, y ordenando que fuera desposeído del mismo.

Apeló el querellado y en la transcripción que archivó en la Secretaría de esta Corte Suprema, no incluyó la prueba practicada. Aceptando la certeza de los hechos alegados, sostiene que no son suficientes para autorizar el procedimiento ni basar la sentencia.

La ley estableciendo los procedimientos de *quo warranto* prescribe en su sección segunda (Comp. sec. 1320) "que * * * cuando cualquier funcionario público haya cometido o permitido alguna acción que de acuerdo con las disposiciones de la ley envuelva la pérdida del cargo, * * * el Fiscal General o cualquier fiscal de la respectiva corte de distrito, ya obrando por su propia iniciativa, ya a instancia de otra persona, podrá presentar a la corte de distrito que tenga jurisdicción en el asunto, una petición de que se le admita una solicitud de que se abra una información de la naturaleza del *quo warranto* * * * "

No hay duda alguna con respecto a lo ilegal de la actuación del querellado. La sección 12 de la Ley Municipal vigente (Leyes de 1919, p. 693) dice: "Ningún miembro de la Asamblea Municipal o del Concejo de Administración o empleado del Municipio podrá estar interesado directa o indirectamente en contratos celebrados con éste." Una disposición similar contiene el artículo 202 del Código Político.

Es así que Manescau celebró un contrato con el Municipio de cuya asamblea era miembro, luego actuó en contra de la ley.

Invocando el artículo 208 del Código Político, alega el querellante que el acto realizado en este caso por el querellado produjo como consecuencia necesaria la vacante del cargo.

El precepto invocado en lo pertinente dice:

"Queda vacante un cargo al ocurrir cualquiera de los siguientes casos, antes de vencerse el período de su duración: * * * (8) Ser sentenciado por delito grave (*felony*) o por cualquier delito que implique depravación moral, o infracción de sus deberes oficiales."

Si el querellado hubiera sido sentenciado por infracción de sus deberes oficiales y con la sentencia como base se hubiera iniciado el procedimiento de *quo warranto,* no habría duda de ningún género, con respecto a la aplicación del precepto invocado por el querellante.

En ausencia de una demostración cumplida en sentido contrario, nos inclinamos a resolver que la corte sentenciadora tuvo jurisdicción para investigar dentro del procedimiento de *quo warranto,* originalmente, el hecho imputado, sin esperar que se iniciara y terminara un proceso criminal, exigiendo, desde luego, la prueba robusta que se necesita para una sentencia condenatoria en un caso criminal, como debemos presumir que se exigió en este caso.    Véase: *State* v. *Donahue,* 91 Neb. 311, y la nota a dicho caso en Ann. Cas. 1913 D 32 y siguientes, y *State* v. *Rose,* 86 Pac. 296, 6 L.R.A. (N.S.) 843.

Que la celebración de un contrato por un funcionario público expresamente prohibido por la ley y claramente contrario a la política pública, constituye una violación de un deber oficial capaz de producir la pérdida del cargo, nos parece evidente.    No se trata de una violación inconsciente o de escasa importancia o trascendencia.    Desde el momento

que se acudió a una simulación para eludir el mandato de
la ley, quedó de manifiesto la intención deliberada de in-
fringirla.

El artículo 86 del Código Penal dice:

"Todo funcionario que en contravención a las leyes se interesare
en contratos o efectuare compras o ventas en públicas subastas, o
adquiriere certificados de acciones u otros valores fiduciarios, incu-
rrirá en una multa máxima de mil dólares, o en pena de presidio
por un término máximo de cinco años, *quedando por siembre inha-
bilitado para ejercer cargo público.*"   (Las itálicas son nuestras.)

Y la jurisprudencia establece:

"Es también una regla bien sentada que un funcionario público
no puede legalmente, a nombre del público que representa, contra-
tar con sí mismo personalmente respecto a la prestación de servicios,
y si él presta tales servicios y el contrato expreso de pago es nulo
por razón de política pública, no se le permitirá recobrar el valor
razonable (*quantum meruit*) de los mismos. Estos principios han
sido aplicados a contratos hechos por miembros de concejos munici-
pales con tales concejos, al efecto de que un miembro del concejo
de un pueblo no puede legalmente verificar un contrato con el pue-
blo para su propio beneficio, cuando el contrato depende de autori-
dad derivado de una votación de dicho concejo. Tales contratos
son nulos sobre la base de que es contrario a la política pública per-
mitir a un miembro de una junta o concejo colocarse a sí mismo en
una posición antagónica a su deber y obtener un contrato para sí
mismo de un grupo del cual es él un miembro."   22 R.C.L. 460.

Véanse los casos de *El Pueblo* v. *Bosch,* 6 D.P.R. 203,
y *El Pueblo* v. *Rivera,* 25 D.P.R. 612.

Desde hace más de medio siglo John C. Calhoun, se ex-
presó así:

"La verdadera esencia de un gobierno libre consiste en conside-
rar los puestos públicos como un fideicomiso, encomendado para el
bien del país y no para beneficio de determinado individuo o par-
tido."

Las puertas de las cortes deben estar siempre abiertas
para que cualquier ciudadano de arraigo pueda defender el

bien del público obteniendo la remoción de los funcionarios
que hacen mal uso del tesoro que el pueblo les confiara.

*Procede la confirmación de la sentencia recurrida.*